HERMAN SCHROEDER et al. v. GEORGE L. EDWARDS et al., Appellants.

HERMAN SCHROEDER et al; JOHN D. GERLACH, Administrator of Estate of HARVEY NEVILLE, Appellant, v. GEORGE L. EDWARDS et al.

Division Two, March 31, 1916.

1. SUFFICIENCY OF EVIDENCE: Judgment of Foreign Court: Raised By Motion for New Trial. An assignment in the mo-

tion for a new trial that "the verdict and judgment is unsupported by any substantial evidence" raises the question of the sufficiency of the evidence, and that proposition necessarily embraces a contention that the judgments against a corporation rendered by a court of another State, which are made the basis of plaintiff's suit against its stockholders for the amount of the unpaid stock issued to them, and introduced in evidence, were insufficient in law to support a finding for plaintiff.

2. ———: ———: **Presumption: Cognovit.** Where the plaintiff's cause of action is bottomed on the judgment of a circuit court of another State, proof of a judgment entered by the clerk of that court in vacation, is not sufficient, unless there are also introduced in evidence the statutes of that State establishing the jurisdiction and the authority to do that which was done by the clerk in vacation. In such case the presumption that the judgment so entered was regular and valid cannot be indulged, because such a judgment, being unknown to the common law, must depend for its validity upon the statutes authorizing it.

3. **STATUTES OF ANOTHER STATE: Proof.** In Missouri the statutory law of another State must be proven the same as any other fact in the case.

4. **CORPORATION: Payment for Stock: Services Rendered By Financial Agent.** Where nothing was paid in money by its stockholders at the time the Illinois corporation was organized, but the plan of its incorporators was to issue the company's bonds to the full amount of its capitalization and use the money derived from their sale in the construction of the electric light plant, it cannot be held that one of them, who, as the company's financial agent, indorsed its notes upon which money was obtained for the first work of construction, which notes when the bonds were sold were paid out of the proceeds, thereby, as against general creditors of the company, paid for the stock issued to him in services rendered the company.

5. **MOTION TO STRIKE OUT: Waiver.** Any error of the trial court in overruling defendant's motion to strike the amended petition from the files, on the ground that it constituted a departure, is waived by filing an answer to the merits and going to trial.

6. **APPEAL: Insufficient Assignment: Striking Out Answer.** An assignment under "Points" that "the portions of defendants' answer stricken out by the court on the motion of the plaintiffs were material to the defense of these defendants, and error was, therefore, committed by the court in such action," with nothing more except the citation of authorities, does not

comply with Rule 15, and does not designate any facts from which the court may comprehend what the point is.

7. **CORPORATION: Unpaid Stock: Creditor Participating in Wrong.** A stockholder who participated in the transaction whereby the services of a financial agent were received and accepted by the corporation in full payment of stock issued to such agent, cannot be heard to say that the stock is not full paid, even though he has loaned money to the company, and cannot hold said agent as a stockholder as for unpaid subscriptions on his stock, to satisfy a judgment against the company in the amount of the money loaned. [Following Meyer v. Min. & Mill. Co., 192 Mo. 162, and distinguishing Gillett v. Chicago Title & Trust Co., 230 Ill. 373.]

8. **REMANDING CAUSE: Confining Issue.** Where all issues in an equity case except one have on appeal been settled, the court, instead of remanding the cause generally, may remand it with directions that upon a retrial the case be confined to the one issue upon which the evidence at the first trial was insufficient to support a decree for plaintiff.

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

REVERSED AND REMANDED (*with directions*).

*Eliot, Chaplin, Blayney & Bedal* for plaintiffs.

(1) A shareholder's liability to creditors of a corporation is determined by the statutes of the State in which the corporation was incorporated, and the construction of its statutes by the court of last resort of that State is followed in all jurisdictions. Meyer v. Mining Co., 192 Mo. 162; Hodgson v. Cheever, 8 Mo. App. 318; Bagley v. Tyler, 43 Mo. App. 195; Guerney v. Moore, 131 Mo. 650; Leucke v. Tredway, 45 Mo. App. 507; Kimball v. Davis, 52 Mo. App. 194; McClure v. Iron Co., 90 Mo. App. 567; Pfaff v. Gruen, 92 Mo. App. 560; 4 Thompson on Corporations (2 Ed.), sec. 5050, p. 1440; 10 Cyc. 670. This liability will be enforced in all other jurisdictions unless the statute creating the right gives an exclusive remedy for its enforcement. Hodgson v. Cheever, 8 Mo. App.

318; Bagley v. Tyler, 43 Mo. App. 195; Guerney v. Moore, 131 Mo. 650; Leucke v. Tredway, 45 Mo. App. 507; Schickle v. Watts, 94 Mo. 411; Van Cleve v. Berkey, 143 Mo. 109; Meyer v. Milling Co., 192 Mo. 162; Euston v. Edgar, 207 Mo. 287. (2) The services of Mr. Edwards in raising $19,500 for the company under the circumstances disclosed in evidence were not such services as could be given or received in payment of capital stock. 1 Cook on Corporations (7 Ed.), pars. 17 and 18; Thompson on Corporations (1 Ed.), sec. 1605; 4 Thompson on Corporations (2 Ed.), secs. 3962-3964; Clark and Marshall on Corporations, sec. 384; Sand Co. v. Crematory Co., 205 Ill. 42; Liebke v. Knapp, 79 Mo. 22; 10 Cyc. 472. (3) Under the law of Illinois, shares of stock must be paid for in money or money's worth. Where an agreement is made to that effect, shares may be paid for in property, but to constitute payment the property must have been bona fide sold to and received by the corporation at its market or cash value. Coleman v. Howe, 154 Ill. 458; Van Cleve v. Berkey, 143 Mo. 109; Sprague v. Bank, 172 Ill. 149; Sand Co. v. Crematory Co., 205 Ill. 42; Gillett v. Title & Trust Co., 230 Ill. 373. (4) In the absence of an express agreement on the part of a corporation, an officer is not entitled to payment for services rendered as such officer. Gridley v. Railroad, 71 Ill. 200; Fritze v. Bldg. & Loan Soc., 186 Ill. 183; Macaroni Co. v. Boggiana, 202 Ill. 312. (5) Payment for the capital stock of a corporation in property must be made under an agreement with the corporation. An agreement between the promoters to this effect is not sufficient. 1 Cook on Corporations (7 Ed.), sec. 18; Jewell v. Paper Co., 101 Ill. 57. (6) The appellants having failed to make the point below that respondents must introduce the Illinois statutes showing the authority of the clerk to enter a judgment in vacation cannot make the point on appeal. The judgments cannot be collaterally attacked for defects in

procedure; being judgments of a court of general jurisdiction of a sister state authenticated under the act of Congress they are entitled to full faith and credit, and it will be presumed that the court had jurisdiction unless it is affirmatively shown to the contrary.  2 Black on Judgments (2 Ed.), secs. 889 and 896; Dodge v. Coffin, 15 Kan. 277; 23 Cyc. 1090, 1095; Lackland v. Pritchett, 12 Mo. 485; Assurance Co. v. Walden, 238 Mo. 49; Hurd's R. S. Ill., ch. 110, sec. 88; Conkling v. Ridgely, 112 Ill. 36; (7) The law of Illinois, as determined by its court of last resort, allows a corporate creditor to recover against shareholders for the unpaid portion of their stock even though the creditor at the time of extending credit knew the shares were unpaid.  Gillett v. Title & Trust Co., 230 Ill. 373; Sprague v. Bank, 172 Ill. 149; 4 Thompson on Corporations (2 Ed.), sec. 5028, p. 1423.

*Jeffries & Corum* for defendants.

(1) The consideration for shares of stock of a corporation may be paid in services rendered or to be rendered.  Cook on Corporations (7 Ed.), sec. 20; Shannon v. Stevenson, 173 Pa. St. 419; Beach v. Smith, 30 N. Y. 116; Liebke v. Knapp, 79 Mo. 22; Vogeler v. Punch, 205 Mo. 574.  (2) A loan of credit is such a service as a corporation may accept in payment for its stock.  Saunders v. Marble Co., 25 Wash. 475; Cook on Corporations (7 Ed.), sec. 20; Bank v. Slater, 117 Fed. 1002.  (3) In determining the question as to whether or not the property or services are of adequate value in the payment for shares of stock, the courts of Illinois and elsewhere have adopted what is known as the "good faith" rule, which provides that in the absence of express fraud the adequacy of the consideration cannot be questioned by creditors of the corporation.  Kunz v. Valve Co., 29 Ohio Cir. Ct. 519; Coleman v. Howe, 154 Ill. 458; Car Seat Co. v. Rankin,

45 Ill. App. 226; Bank v. Northrup, 82 Kan. 638; Farwell v. Tel. Co., 161 Ill. 52; McBride v. Farrington, 131 Fed. 797; Coit v. Amalgamating Co., 119 U. S. 343; Fogg v. Blair, 139 U. S. 118; Cook on Corporations (7 Ed.), sec. 46; Trust Co. v. McMillan, 188 Mo. 547; Hall v. Henderson, 134 Ala. 455, 63 L. R. A. 673; McClure v. Iron Co., 90 Mo. App. 567; Carp v. Chipley, 73 Mo. App. 22; Vogeler v. Punch, 205 Mo. 558; Peck v. Coal Co., 11 Ill. App. 88; Chemical Works v. Glass Co., 34 Ill. App. 404; Young v. Iron Co., 65 Mich. 411; Netherly v. Baker, 35 N. J. Eq. 301; Beckley v. Schlog, 46 N. J. Eq. 533. (4) No statute of the State of Illinois being introduced in evidence prohibiting the payment of stock in services, the common-law rule in regard thereto will be applied. Horton v. Lbr. Co., 147 Ky. 227; McClure v. Iron Co., 90 Mo. App. 567; 10 Cyc. 649; Coffin v. Ransdell, 110 Ind. 424. (5) Where a judgment of confession in vacation by the clerk is authorized by a statute of a foreign State, such statute must be introduced in order to prove a valid judgment. Otherwise the common-law rule that a judgment is a judicial act and must be entered in open court applies. Roundy v. Hunt, 24 Ill. 598; Trimble v. Stamper, 179 Mo. App. 300; Secs. 6281, 6282, R. S. 1909. (6) Where a creditor participated in the scheme whereby the capital stock of a corporation has not been fully paid and therefore knew at the time he extended credit to it that it was not fully paid, he cannot thereafter enforce his claim by suing the stockholders for the unpaid portion of their stock. This is conceded by appellant to be the well-settled law of Missouri. He asks this court to apply to this case the law of Illinois as declared by the courts of that State, wherein he claims all question of knowledge of, or participation in, the scheme by which the stock is issued for less than its expressed par value, is eliminated from the right of a creditor of the corporation to recover from the stockholders. If this be the set-

tled law of Illinois as declared by the courts of that State, and is relied upon by appellants to control this case, it should have been pleaded and proved in the lower court.  Morton v. Supreme Council, 100 Mo. App. 88; Garrett v. Conklin, 52 Mo. App. 654; Ginnochio v. Railroad, 155 Mo. App. 163; Thompson v. Railroad, 243 Mo. 336; Tennent v. Ins. Co., 133 Mo. App. 345.  (7) The common law of Illinois applicable to this case is the same as the general common-law rule.  When the evidence shows that the capital stock of a corporation was to be paid for in property or services under an agreement between the corporation and the stockholders, and said agreement to render services in payment for the stock has been made and carried out in good faith, in the absence of fraud, creditors are foreclosed from a recovery against such stockholders on the ground that the stock has not been paid for. McClure v. Iron Co., 90 Mo. App. 460; Carp v. Chipley, 73 Mo. App. 22; Vogeler v. Punch, 205 Mo. 558; Kunz v. Valve Co., 29 Ohio Cir. Ct. 519; Coleman v. Home, 154 Ill. 458; Car Seat Co. v. Rankin, 45 Ill. App. 226; McBride v. Farrington, 131 Fed. 797; Meyer v. Milling Co., 192 Mo. 162; Berry v. Rood, 168 Mo. 333; Woolfolk v. January, 131 Mo. 620; Trust Co. v. McMillan, 188 Mo. 1; Shield v. Hobart, 172 Mo. 491; Biggs v. Westen, 248 Mo. 333; Bonet Const. Co. v. Westen & Kline, 153 Mo. App. 185; Millinery Co. v. Trust Co., 251 Mo. 553.

WILLIAMS, C.—This is a proceeding in equity by judgment claimants of the Chester Light, Water & Ice Company, a corporation organized under the laws of the State of Illinois, to recover from the defendants, residents of St. Louis, Missouri, as stockholders of said corporation, an amount alleged to be unpaid on the stock held by them in said corporation, and to have said amount, due on said stock, applied to the payment

267 Mo. 30

of the plaintiffs' respective claims. Trial was had, in the circuit court of the city of St. Louis, resulting in a judgment and decree in favor of all of the plaintiffs, except plaintiff Neville, and judgment was rendered against defendant George L. Edwards for the sum of $10,226.26 and against defendant Grant for the sum of $343.16, making a total judgment of $10,569.42, which was the total amount of judgments and claims held by the respective plaintiffs, less the claim of plaintiff Neville. Cross appeals were duly taken to this court, one appeal by plaintiff Neville and another appeal by the defendants Edwards and Grant.

The third amended petition, upon which the case was tried, alleged the incorporation of the Chester Light, Water & Ice Company, under the laws of the State of Illinois, with an authorized capital of $35,000, divided into three hundred and fifty shares of the par value of $100 each, and that defendant George L. Edwards and one J. D. Gerlach were the original incorporators and promoters of said corporation and that all but five shares of said capital stock were originally subscribed for by A. D. Grant as a "straw man" and that said Grant paid no consideration to said corporation for said stock.

That immediately after said corporation was organized said Grant transferred 340 shares of said stock to defendant Edwards; that said Edwards, afterwards, transferred all but 147 shares of said stock to other parties, among them J. D. Gerlach, 146 shares; that an understanding existed between Edwards and Gerlach whereby each was to receive approximately one-half of the capital stock of said corporation; that said defendant Edwards became the owner of and holder of one hundred and forty-eight shares of stock in said corporation, and now owns and holds the same on the books of the corporation and that no consideration has ever been paid to the corporation, nor has the corporation ever received any value for the one

hundred and forty-eight shares of stock so held by defendant Edwards.

The defendant Edwards, in 1901, indorsed and delivered to said J. D. Gerlach a certificate for said one hundred and forty-eight shares of stock held by said Edwards, but that said transfer has never been recorded upon the books of the corporation, and that, at the time of the transfer, the corporation was insolvent and said Gerlach was insolvent and said transfer was made by said Edwards to avoid liability on said stock; that under the common law of Illinois, the transferrer of stock remains liable thereon until the transfer is recorded on the books of the corporation and that such liability has not been removed by statute in said State; that there is now due and unpaid on said 148 shares of stock held by said Edwards the sum of $14,800, for which said defendant is liable to these plaintiffs; that said defendant Grant owns five shares of the capital stock of said company, upon which there has been nothing paid, and that there is due on such shares the sum of five hundred dollars; that said defendants Grant and Edwards are the only solvent stockholders, holding unpaid stock, within the jurisdiction of said circuit court.

The petition further alleges that section 8, chapter 32, of the Revised Statutes of Illinois, provides as follows:

"Every assignment or transfer of stocks on which there remains any portion unpaid shall be recorded in the office of the recorder of deeds of the county within which the principal office is located, and each stockholder shall be liable for the debts of the corporation to the extent of the amount that may be unpaid upon the stock held by him to be collected in the manner herein provided. No assignor of stock shall be released from any such indebtedness by reason of any assignment of his stock, but shall remain liable therefor jointly with the assignee until said stock be fully

paid.   Whenever any action is brought to recover any
indebtedness against the corporation, it shall be com-
petent to proceed against any one or more stockhold-
ers at the same time to the extent of the balance unpaid
by such stockholders upon the stock owned by them
respectively, whether called in or not, as in cases of
garnishment.   Every assignee or transferee of stock
shall be liable to the company for the amount unpaid
thereon, to the extent and in the same manner as if he
had been the original subscriber.''

The petition further alleges that plaintiff Herman
Schroeder, on December 14, 1904, recovered judgment
in the circuit court of Randolph County, in the State
of Illinois, against said Chester Light, Water & Ice
Company, in the sum of $56.70, together with costs
amounting to $4.85.   That execution was duly issued
upon said judgment, addressed to the sheriff of said
Randolph County, and was, by said sheriff, duly re-
turned *nulla bona*.   That said judgment still remains
due and unpaid, and under the laws of the State of Illi-
nois bears interest at the rate of five per cent per an-
num.

The judgments of the other respective plaintiffs
are set forth in the same manner as the judgment of
plaintiff Schroeder.

The prayer of the petition asks that the court en-
ter a decree against said defendants, in proportion to
the amount of their respective stock liability, an
amount sufficient to satisfy the total claims and judg-
ments of the respective plaintiffs.

Defendants filed a motion to strike out the third
amended petition on the ground that it was a departure
from the original cause of action pleaded.   This mo-
tion was overruled and defendant saved an exception.

Defendants' answer to said third amended petition
alleged:

1st. That the court had no jurisdiction of the sub-
ject-matter.

2nd. That the plaintiffs, or some of them, have no legal capacity to sue.

3rd. They admit that defendant Edwards, in 1901, sold and transferred all of his stock in said company to said J. D. Gerlach for a consideration of five dollars per share and executed to said Gerlach a power of attorney to cause said shares of stock to be transferred on the books of the company to said Gerlach, and that, by reason thereof, the defendant Edwards ceased to be a shareholder in the company, and that if the company is indebted to the plaintiffs, as alleged in their amended petition, said indebtedness accrued long subsequent to the time when defendant Edwards ceased to be a shareholder, as aforesaid.

4th. That when the company was organized, it was mutually agreed between the incorporators thereof and all the subscribers to the capital stock that its capital stock should be paid, wholly, in services, contract and franchise rights to be rendered to and transferred to the company, or for its use and benefit, either before or after the incorporation of the company, and that all of the services and contract and franchise rights agreed to be rendered to and transferred to the company, in payment of the capital stock of the company, were rendered to and transferred to the company, as agreed, and its capital stock fully paid as agreed, all of which was known to the plaintiffs and each of them, and particularly to the plaintiff Harvey Neville, who was an incorporator of the company, shareholder, director and treasurer thereof, from its organization to its final dissolution, and that neither of the plaintiffs gave or extended credit to the company on the faith that its capital stock had been paid in money or its equivalent in property value, but well knew that the capital stock of the company was not intended to be paid in money or in its equivalent in property.

5th. That the liability of shareholders in a corporation, organized under the laws of Illinois, to said

corporation or its creditors, is a contractual liability, and that, under and by virtue of the laws of the State of Illinois, which form a part of the said contract, the shareholders of a corporation, organized under the laws of said State, can only be sued upon their stockholders' liability in the courts of that State, and such liability could not be enforced by suit or otherwise except by such suit or proceeding prescribed for that purpose by the laws of the State of Illinois, and in the courts of said State. That under and by virtue of section 8 and section 25, chapter 32, of the Revised Statutes of Illinois, it is provided as follows:

(Section 8 is the same section as is copied in plaintiffs' petition.)

"Section 25. If any corporation or its authorized agents shall do, or refrain from doing, any act which shall subject it to a forfeiture of its charter or corporate powers, or shall allow any execution or decree of any court of record, for a payment of money, after demand made by the officer, to be returned 'No property found,' or to remain unsatisfied for not less than ten days after such demand, or shall dissolve or cease doing business, leaving debts unpaid, suits in equity may be brought against all persons who were stockholders at the time, or liable in any way, for the debts of the corporation, by joining the corporation in such suit; and each stockholder may be required to pay his pro rata share of such debts or liabilities to the extent of the unpaid portion of his stock, after exhausting the assets of such corporation. And if any stockholder should not have property enough to satisfy his portion of such debts or liabilities, then the amount shall be divided equally among all the remaining solvent stockholders. And courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation, to appoint a receiver therefor who shall have authority, by the name of the receiver of such corporation (giving the name), to sue

in all courts and do all things necessary to closing up its affairs, as commanded by the decree of such court. Said receiver shall be, in all cases, a resident of the State of Illinois, and shall be required to enter into bonds, payable to the People of the State of Illinois, for the use of the parties interested, in such penalty and with such securities as the court may, in the decree or order, appointing the same, require. In all cases of suits for or against such receiver, or the corporation of which he may be receiver, writs may issue in favor of such receiver or corporation, or against him or it, from the county where the cause of action accrued to the sheriff of any county in this State for service."

That the plaintiffs have not commenced any suit as provided by the laws of the State of Illinois to determine the liabilities and assets of the company and have not applied to the payment of the creditors of the company all the assets of the company and have not determined, in such a suit, the pro rata liability of all the shareholders of the company and, by reason thereof, are not entitled to maintain this suit.

6th. That on the —— day of ————, in a certain cause, entitled ———— ·v. The Chester Light, Water and Ice Company, pending in the United States Circuit Court for the ———— District of Illinois, ————was appointed receiver to take charge of and administer the property and effects of the company, and he, if any one, is the proper party to collect any dues or liabilities which may be owing to the company or its creditors from the shareholders or others.

7th. That under the laws of the State of Illinois a shareholder is not liable to the creditors of a corporation upon their unpaid stock, unless the overvaluation of the property turned in for said stock was fraudulently and knowingly made, with the intent of evading the statutes of Illinois.

8th. That plaintiffs' claims are barred by the Statutes of Limitation of the State of Illinois.

9th. A general denial.

Upon plaintiffs' motion, the court struck out of defendants' said answer the following portions thereof:

1st. The allegation that plaintiffs did not have legal capacity to sue.

2nd. The allegation that defendant Edwards executed and delivered to Gerlach proper power of attorney to transfer upon the books of the company the stock sold to him in 1901.

3rd. The allegation that, after said sale of stock in 1901, the defendant Edwards ceased to be a shareholder in the company and that if the company was indebted to the plaintiffs, said indebtedness accrued long subsequent to the time when said defendant Edwards had ceased to be a stockholder in the company.

4th. The entire portion of paragraph five of said answer.

Defendants excepted to the action of the court in sustaining said motion. Plaintiffs thereafter filed an amended reply to the remaining portions of said answer. The reply contained a general denial and an allegation that the matters pleaded in the fourth paragraph of said answer constituted no defense to the plaintiffs' cause of action under the laws of the State of Illinois as decided by the highest court of said State in the case of Gillett v. Chicago Title & Trust Co., 230 Ill. 373.

The record in this case is very large, but the facts shown by the evidence are not complex and may be stated substantially as follows: In 1892, one Gerlach, a resident of Chester, Illinois, having procured certain electric light and water franchises from the city of Chester, was desirous of promoting a corporation to take over said franchises and erect an electric light plant and a water plant in said city. In furtherance of this plan, Gerlach called upon defendant Edwards in

St. Louis and laid the plan before him. Gerlach was, at that time, cashier of a bank at Chester, but was not a man of any great financial resources. Mr. Edwards was engaged in the brokerage business in the city of St. Louis and was a man of means. It was agreed between Edwards and Gerlach that they would organize a corporation, under the laws of Illinois, with a capital stock of $35,000, each to receive, approximately, one-half of the stock. Gerlach was to superintend the construction of the plants and Edwards was to act as financial agent. The plan was to bond the company for $35,000 and, by the sale of the bonds, raise funds with which to construct the plants for the corporation. Gerlach's stock was to be paid for by his transferring to the company the franchises which he held in the city of Chester. Edwards's stock was to be paid for by services to be rendered by him as the financial agent of the corporation. The company was organized, J. D. Gerlach, A. D. Gordon, George L. Edwards, William H. Bryan and Harvey Neville each subscribing for one share and A. D. Grant (who acted as "straw man") subscribing for three hundred and forty-five shares. After the corporation was organized, all of the stock subscribed for by Grant, with the exception of five shares, which he retained, was transferred on the books of the company, so that, finally, defendant Edwards held one hundred and forty-eight shares of the capital stock, Gerlach one hundred and forty-seven shares and the remaining stock divided in small amounts among other stockholders. Plaintiff Neville held two shares of the capital stock. After the corporation was organized, Gerlach transferred his franchises to the corporation and the corporation began the construction of an electric light plant at Chester. The company had no funds with which to construct the plant but the money was raised by the corporation giving its notes, with Edwards as indorser. In this manner, five thousand dollars was first raised; then six thousand dollars

was raised, out of which the first five thousand dollars of indebtedness was paid, and, at another time, thirteen .thousand five hundred dollars was raised. The obligations upon which defendant Edwards became endorser were retired later with the money obtained from the sale of the mortgage bonds of the corporation. At the time that defendant Edwards was lending his name to the credit of the company, he was also the president of the company. Plaintiff Neville was treasurer of the company and also a director; and was the father-in-law of Gerlach. Gerlach was elected general manager.

At a meeting of the directors, on January 30, 1894, a resolution was passed allowing Gerlach the sum of $14,700 in payment for his franchises and, *on motion of H. Neville, George L. Edwards, defendant, was allowed the sum of $14,900 for "services as financial agent and other services."* It appears that the stock of Gerlach and Edwards was paid for in this manner and that neither Edwards, Grant nor Gerlach paid any money to the corporation for their stock and did not render any further consideration to the corporation than that above mentioned.

There was evidence tending to show that the company was insolvent in 1901, but the failure of the company did not occur until about 1903, at which time the bond-holders filed a petition to foreclose the mortgage and a sale of the company property was had in such foreclosure.

Some of the witnesses testified that the services of defendant Edwards, as financial agent, were worth $15,000; one of the witnesses stated that he did not mean to say that they were worth that much in cash. There was evidence tending to show that the company would not have been able to build its plants if it had not been for defendant Edwards indorsing the company's paper to raise temporary funds. It also appears, from the evidence, that defendant Edwards

sold his stock to Gerlach, in November, 1901, Gerlach paying Edwards five dollars per share for the stock; but no transfer of the stock was ever made on the books of the company.

A number of opinions by the Supreme Court of the State of Illinois were offered in evidence; also the statutes referred to in the pleadings.

Defendants offered in evidence an order made by the circuit court of the United States, at the city of Springfield, Illinois, on the twentieth day of November, 1903, appointing a receiver for the company. The order appointed Don E. Detrich receiver, and ordered him to take and hold the property of the company, described in the bill, until further order of the court, and enjoined the defendant corporation, and all other persons, from interfering with any of said property and from prosecuting against said defendant corporation any suits or actions at law or equity.

The petition, applying for the receiver, is not set forth in the record, neither are any of the subsequent proceedings in said foreclosure proceeding set forth in this record, but it appears, in the evidence, that the corporate property sold for much less that the mortgage indebtedness.

All of the plaintiffs, except one, made proof of their claims by duly authenticated, certified copies of the record of the circuit court of Randolph County, Illinois, showing judgment for the respective amounts claimed by each plaintiff to have been rendered by the clerk, in vacation. The following is a copy of the record as to one of said judgments. All the judgments were similar as to form.

"Herman Schroeder v.
The Chester Light, Water &  | Cognovit.
Ice Company.

"Now, on this 14th day of December, A. D. 1904, it being in vacation after September Term, A. D. 1904,

of this court, comes the plaintiff, Herman Schroeder, by A. E. Crisler, his attorney, and files his declaration in a plea of trespass on the case on promises, and files also the instrument in writing on which this suit is brought, to-wit: One promissory note, the execution of which is duly proven by the affidavit of Wm. H. Miller, on file in this cause.

"And now comes also the said defendant, by Don E. Detrich, attorney, and files herein his warrant of attorney, duly executed by the said defendant, authorizing him to appear in any court of record in behalf of said defendant and waive service of process, and confess judgment in favor of said plaintiff, and against said defendant, for the amount found to be due upon said certain promissory note annexed to said warrant of attorney, besides the costs of suit, the execution of said warrant of attorney being duly proved by the affidavit of Wm. H. Miller on file herein; and said defendant's attorney also files his cognovit, by which he waives service of process upon the said defendant and confesses the said action of the plaintiff, and that said plaintiff, by reason of the non-performance of the promises in the plaintiff's declaration mentioned, has sustained damages in the sum of fifty-six dollars and seventy cents, it being the amount due on said note, over and above his costs by him in this behalf expended; and the said defendant, by its said attorney, consents and agrees that judgment may be entered in this behalf in favor of the said plaintiff and against said defendant for the amount of damages aforesaid, to-wit, for the sum of fifty-six dollars and seventy cents and for costs of suit; and release all errors in entering up this judgment, or in issuing execution thereon, and consents to the issuing of immediate execution on the same.

"By virtue whereof and in pursuance of the statute in such case, made and provided, it is considered that said plaintiff have and recover of and from the

said defendant the said sum of fifty-six dollars and seventy cents, being the amount of damages so confessed as aforesaid, together with his costs and charges by him about this suit in this behalf expended and that he have execution therefor.

"Attest:          W. Geo. Beever.

                                    Clerk."

Evidence was also introduced showing that executions were issued on these judgments and returned not satisfied.

It appears, from the evidence, that Gerlach, prior to the institution of this suit, had received his discharge as a bankrupt.

It further appears, from the evidence, that plaintiff Neville, who was a stockholder and a director of the company, held two shares of the company's stock and was elected treasurer of the company; that he was the father-in-law of Gerlach and was made a stockholder and director of the company so as to help supply a sufficient number of directors for the company and that all of his acts, in connection with the company, were done at the suggestion of Gerlach. Mr. Neville was engaged in steamboating and paid very little attention to the affairs of the corporation in question. However, we think that there is sufficient evidence to show that he knew that defendant Edwards's stock was attempted to be paid up by the financial services rendered to the company by Edwards and, in fact, Neville made the motion, at a directors' meeting, to allow Edwards $14,900 for his services as financial agent of the corporation. This resolution was passed by the board of directors. Mr. Neville had nothing to do with the books of the company and knew nothing about the company's affairs, except information given to him by Gerlach and information obtained by him at directors' meetings. Neville loaned the company money, from time to time, and, at the time the company failed, it owed him for borrowed money the sum of $5,065.74.

Since the trial was had in the circuit court, Neville died, and the suit, as to him, has been revived in the name of John D. Gerlach, his administrator.

We will first consider the appeal of the defendants below:

I. Appellants contend that the judgments introduced in evidence were insufficient in law to support the finding for plaintiffs. In this regard, it is contended **Judgment** that, in the petition, it is alleged that the **as Proof.** plaintiffs' respective claims are based upon judgments "in the circuit court of Randolph County in the State of Illinois against said Chester Light, Water & Ice Company" etc., whereas the proof offered show only judgments entered by the clerk of said court in vacation and that, since no proof of statutory provisions of Illinois authorizing a procedure of this character was offered in evidence, no presumption as to their validity can be allowed. Respondents attempt to meet this contention by saying (1st) that the point was not raised below and hence cannot be reviewed here, and (2nd) although it had been properly raised below, yet the judgments were of a court of general jurisdiction and that it will be presumed that the court had jurisdiction to enter the judgment unless it is affirmatively shown to the contrary.

Was the point sufficiently raised below? One of the grounds of the motion for a new trial was the following: "Because the verdict and judgment is unsupported by any substantial evidence." We think this ground in the motion for a new trial raises the question as to the sufficiency of the evidence, which proposition, necessarily, embraces the point now urged by appellants.

This brings us to the discussion of the question: upon its merits, to-wit, Was there a failure of proof which rendered the evidence insufficient to support the decree? The petition pleads the judgments as judg-

ments of the circuit court. The proof shows judgments entered by the clerk of the court in vacation. Is the proof sufficient to establish the validity of the judgments offered in evidence? The only possible way that this proof could be established would be either (1st) by presumption arising from the record offered, or (2nd) by introducing in evidence the statutes of Illinois establishing the jurisdiction and authority to do that which it appears was done by the clerk in vacation. Since there was no attempt to make proof by introducing the statutes of Illinois, it leaves us to a determination of the sole question, to-wit, Will it be presumed that the judgments introduced in evidence were regular and valid? We are of the opinion that the situation cannot be aided by presumption. This because the proceeding upon its face appears to be one unknown to the common law, and must, therefore, derive its validity from some statutory provision, and it also appears upon the face of the judgments that the judgments were not rendered by a court of general jurisdiction, but rather by one of the ministerial officers of the court, the clerk, in vacation.

Discussing the subject of the presumption to be indulged concerning judgments of a sister state, Black on Judgments, vol. 2, sec. 875, states the correct rule, here applicable, as follows:

"And it is further to be observed that if the court rendering the judgment was one of limited, inferior, or *statutory jurisdiction, or if the proceedings were in derogation of the common law,* jurisdiction will not be presumed, but must be affirmatively shown by the face of the record or fully and distinctly pleaded and proved." (Italics ours).

It would appear that the manner of pleading such judgments in this State is regulated by section 1836, Revised Statutes 1909. The foregoing rule, stated in Black on Judgments, supra, was, by this court in Banc, quoted with approval in the case of State ex rel. v.

Grimm, 239 Mo. 340, l. c. 356, and should, therefore, be considered as controlling here.

In discussing the matter of the presumptions attending judgments of a sister state, Division One of this court, in the case of Norman v. Insurance Company, 237 Mo. 576, l. c. 584, said:

"Further, no matter whether the court of common pleas [of Philadelphia] is or is not a court of general jurisdiction, its jurisdiction in attachment and garnishment proceedings, they being special and statutory, is not supported by the presumptions which usually attend the acts of courts of general jurisdiction."

Applying said rule to the situation here, it, necessarily, follows that the evidence is insufficient to support the decree, because of a failure to prove any statutory authority for the rendition of such judgments.

Respondents, in support of their contention, rely upon the case of Dodge v. Coffin, 15 Kan. 277, which appears to be in point. It appears, however, that the court's ruling in that case was influenced, largely, by the fact that it took judicial notice of the statutory law of the State of Illinois. That is not the rule in this State. In Missouri, the statutory law of another State must be proven the same as any other fact in the case. [Gibson v. Railroad, 225 Mo. 473, l. c. 483; Norman v. Insurance Co., 237 Mo. 576, l. c. 582.]

II. It is contended that the court erred in failing to find that the services rendered the corporation by appellant Edwards were such services as could be given in payment of capital stock and that they were reasonably worth the sum of $14,900, the par value of the stock received by Edwards.

**Payment for Corporate Stock in Services.**

It appears that Edwards, the president of the company, and one of its active promoters, claims to have

paid for his stock by services rendered the company as financial agent. His said services consisted in aiding the corporation to procure temporary loans, Edwards lending his credit to the company as indorser on the paper. It does not appear that Edwards had to pay any of these notes upon which he was indorser, but that the same were paid by money derived from the sale of bonds of the corporation. It further appears that the scheme of organization was that the company should be organized for $35,000 and that the stockholders intended to build the company's plant, not from money paid upon the stock, but by bonding the company for an amount equal to the capital stock and then selling the bonds. In carrying out this plan, it was perhaps necessary that the work be started before the bonds could find a suitable market, and to this end Edwards aided, as above stated, in temporarily financing the proposition until the money could be realized on the bonds. Edwards paid no other consideration for his stock, and it would appear that even the services which he rendered were made necessary because of the fact that he had not paid anything on his stock. It appears that the plan was that the corporation should acquire its working capital from the proceeds of a liability (bonds) rather than from assets derived from stock subscriptions. And the said services of Edwards were expended in thus promoting and financing the company. If services of this kind can be given by an officer of a company, in payment of his stock subscription, then the whole purpose of the law requiring stock to be paid in "money or money's worth" can easily be defeated.

We think that the chancellor did not err in finding that, as against the claims of the general creditors, the services of Edwards, as financial agent, could not be given in payment of his stock. We have been unable to find a discussion of this exact point in any of the

authorities, but it occurs to us that a bare statement of the matter is sufficient to justify the action of the learned trial court in the ruling made.

III. Appellants cannot now avail themselves of the point that the court erred in overruling their motion to strike the third amended petition from the files on the ground that it constituted a departure, this because error, if any, occurring thereby, was waived by appellants filing answer to the merits and going to trial. [Castleman v. Castleman, 184 Mo. 432, l. c. 440.]

*Waiver.*

The same also may be said with reference to the point that the court erred in overruling appellants' motion requesting an election. [White v. Railroad, 202 Mo. 539, l. c. 561-562; Hanson v. Neal, 215 Mo. 256, l. c. 270-271.]

IV. Appellants contend that the court erred in striking out the several portions of their answer. Under the head of "Points and Authorities," in their brief, appellants, concerning this proposition, state, as follows: "The portions of defendants' answers stricken out by the court on the motion of the plaintiffs, were material to the defense of these defendants, and error was, therefore, committed by the court in such action," citing thereunder "31 Cyc. 639, and Hoffman v. Wight, 137 N. Y. 621."

*Assignment of Point.*

There were many portions of the answer stricken out by the court and, with the aid only of the foregoing, it is difficult to ascertain what the point is, upon which appellants rely. The above statement under "Points and Authorities" is, in fact, nothing more than a mere assignment of error. Rule 15 of this court provides that "all briefs shall be printed and shall contain, separate and apart from the argument or discussion of authorities, a statement in numerical order,

of the points relied on, together with a citation of authorities appropriate under each point. And any brief failing to comply with this rule may be disregarded by the court.''

In the recent case of Harrison v. Cleino, 256 Mo. 607, l. c. 608, in discussing this rule, WOODSON, P. J., said:

''Clearly the meaning of the rule is, that the statement of the points shall be clearly and fully stated, in order that the court may comprehend therefrom the facts upon which the legal propositions presented for determination are predicated.''

For the foregoing reasons, therefore, we will not attempt a discussion of this assignment of error.

V.. We will now consider the appeal of the plaintiff, John D. Gerlach, administrator of the estate of Harvey Neville, deceased.

The points involved in this appeal do not differ, materially, from those discussed in the foregoing appeal, except in one important particular.

The trial court found against the claim of plaintiff Neville on the theory that since Neville had participated in the organization scheme whereby the **Stockholders.** financial services of Edwards were agreed upon and allowed to be given in payment of his stock, he could not now be heard to question that the stock was fully paid. The trial court based its ruling upon the authority of Meyer v. Mining & Milling Company, 192 Mo. 162, l. c. 191 et seq.

Appellants contend that the court erred in so holding and that the decree should have been in favor of plaintiff Neville's claim, in accordance with the rule of law announced in Gillett v. Chicago Title & Trust Co., 230 Ill. 373, which rule of law was pleaded by plaintiff in the reply. Respondents contend that the case of Gillett v. Chicago Title & Trust Co., supra, is not in point.

In the Meyer case, supra, l. c. 192, it was held that "a party to the transaction whereby property was turned over to the company as payment in full for the stock issued, cannot be heard to say that the stock is not full paid stock, even though he has loaned money to the company, and cannot hold his fellow stockholders as for unpaid subscriptions on their stock, to satisfy a judgment in his favor for money actually loaned to the corporation." In that case, the case of Sprague v. Bank, 172 Ill. l. c. 168-9, was relied upon by the losing party as controlling. In the Sprague case, it was held that the stockholder's liability upon unpaid stock "is not dependent, in any degree, upon the knowledge possessed by the creditor that such subscription was or was not paid in full. If unpaid to the corporation, it must be paid to the creditor." [Sprague v. Bank, 172 Ill. l. c. 168-9.] In the Meyer case, after stating that the facts, of that case, were unlike those in the Sprague case, in that the creditor in the Meyer case was one of the original parties agreeing to the method by which the stock should be paid, while the creditor in the Sprague case did not stand in such a position, the court reached the conclusion that the Sprague case should not be considered as controlling, and used the following language (l. c. 194):

"If the facts in judgment in the Sprague case were like the facts in judgment here, this court might feel bound to enforce the interpretation placed upon the Illinois statutes by the court of last resort of that State, but the decision in the Sprague case imposes no such obligation on this court; and as such a result as is here sought is directly contrary to the rules that obtain in this State, this court will adhere to the rule heretofore announced by it in cases like this, until a similar case has been brought before the Supreme Court of Illinois and that court has otherwise declared the law in that State upon similar facts."

The basic facts involved in the case at bar are the same, in effect, as those held in judgment in the Meyer case and, under the above ruling, the Meyer case should be followed in the case at bar unless it appears that the Supreme Court of Illinois has held otherwise on similar facts.

Appellants contend that the above mentioned case of Gillett v. Chicago Title & Trust Co., is such a case, and that, since the facts involved in the Gillett case are similar, in effect, to those held in judgment in the Meyer case, the Gillett case should control. If the principal facts underlying the Gillett case were the same as those discussed in the Meyer case, the position of appellants would be sound. But, after a careful consideration of the Gillett case, we are unable to discover that the facts discussed were similar. The discussion of this point in the Gillett case appears to be confined merely to the effect that the creditor's knowledge of the unpaid stock has upon his rights to recover against the stockholder. [Gillett v. Chicago Title & Trust Co., supra, l. c. 414-415.] The opinion, in no manner, undertakes to discuss the legal proposition passed upon in the Meyer case and now presented in the case at bar. In the Gillett case, it does not appear that either of the original incorporators who agreed that the capital stock should be paid up by certain prospective patents, etc., were creditors, as is the case of creditor Neville in the case at bar.

It, therefore, follows that the trial court was correct in following the Meyer case and in finding against plaintiff Neville.

VI. By reason of the conclusions reached in the foregoing discussion concerning the respective appeals, it follows that that portion of the judgment disallowing the claim of plaintiff Neville should be affirmed, and that the portion of the judgment finding in favor of the claims of the remaining plaintiffs and

against the defendants should be reversed and the cause remanded.

It is so ordered. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. *Faris, P. J.,* and *Walker, J.,* concur; *Revelle, J.,* not sitting.

## ON MOTION TO MODIFY.

PER CURIAM.—Herman Schroeder et al., respondents in the above entitled cause, have duly filed a motion to modify the foregoing opinion so the retrial of the cause, when remanded, shall be confined to the single issue as to whether or not there was statutory authority in Illinois authorizing the entry and rendition by the clerk of the circuit court, in vacation, of the various judgments relied upon by the respective plaintiffs (respondents herein), as a basis of their respective claims.

It appears that all other issues in the cause were properly tried and determined before and that the motion to modify should be sustained. [McLure v. Bank of Commerce, 252 Mo. 510, l. c. 524.]

It is therefore ordered that the foregoing opinion be modified so that instead of remanding the cause generally for a new trial, the cause be remanded with directions that the new trial shall be confined to the single issue as to whether or not there was statutory authority in Illinois authorizing the clerk of said circuit court to enter or render the respective judgments upon which said respondents base their respective claims. Either party may, if they so desire, so amend the pleadings as to more clearly draw the issue upon this question.

After a determination of this single issue, the circuit court will thereupon enter its judgment or decree, in accordance with the facts heretofore found and the facts then found upon this issue.