T. J. Daggs, Administrator of Estate of W. H. Wells, v. J. W. McDermott and Emma McDermott, Appellants.—34 S. W. (2d) 46.

Division One, January 5, 1931.

*George M. Callihan* and *T. L. Montgomery* for appellants.

*B. L. Gridley* for respondent.

FERGUSON, C.—This is a suit in equity by an administrator as plaintiff against J. W. McDermott and Emma S. McDermott, husband and wife, defendants, seeking to set aside an alleged fraudulent conveyance of real estate.

The petition alleges that plaintiff is the administrator of the estate of W. H. Wells, deceased, and that on the 20th day of October, 1922, the defendant J. W. McDermott "was and still is indebted to W. H. Wells and his estate on three certain promissory notes in the principal sum of $6,566.90 and accrued interest, amounting in

the aggregate to the sum of $7,590.90 on September 7, 1925, with attorneys' $150 and cost of suit, for which amount the plaintiff obtained a judgment against said J. W. McDermott on the 7th day of September, 1925, in the Circuit Court of Clark County, Missouri.

"That said suit was instituted by the plaintiff on the 13th day of July, 1925, against the defendant, J. W. McDermott, that on the 3rd day of August, 1925, the said J. W. McDermott and his wife, Emma S. McDermott, he, the said J. W. McDermott being largely indebted to the plaintiff as aforesaid and other persons in excess of his ability to pay, with the intent to hinder, delay and defraud his creditors including this plaintiff and to prevent the collection of his indebtedness aforesaid to plaintiff, and without any consideration therefor fraudulently conveyed or attempted to convey, his homestead in Kahoka, Missouri, which plaintiff agrees is of the reasonable value of $8,000 to-wit: (here the real estate involved is described) to his wife, Emma S. McDermott.''

Continuing, the petition alleges that the defendant Emma S. McDermott was a voluntary grantee, and prays for a decree of the court setting aside and declaring said conveyance to be null and void for the reason that same was made for the purpose of hindering, delaying and defrauding "the plaintiff and other creditors, if any, of J. W. McDermott and without consideration, and that the homestead of $1500 be set off therein and the residue of said real estate be subjected to the execution and judgment heretofore rendered in this court as aforesaid in favor of the plaintiff.''

The answer admits: "the indebtedness of defendant, J. W. McDermott to the plaintiff's intestate;'' that "defendants are husband and wife'' and that "the property described in the petition is the homestead of the defendants.'' The answer denies that the property is of the value of $8,000 and that the conveyance mentioned in the petition is "voluntary and without consideration'' and "for further answer defendants deny each and every allegation in the petition contained.'' Continuing, the answer avers, in substance, that the consideration for the conveyance was a valid and subsisting indebtedness existing at the time and due from the husband to the wife; that a son of the defendants died in 1918, being at the time a soldier in the World War; that his mother, the defendant Emma S. McDermott, was named as sole beneficiary in a policy of Government insurance issued to her said son in the amount of $10,000; that an award was made to her upon said policy of insurance of $57.50 per month and that she has received said payments monthly; "that under a contract and agreement with her co-defendant, J. W. McDermott, defendant, Emma S. McDermott, turned said insurance to defendant, J. W. McDermott, by the terms of which her co-defendant was to reimburse her for the amount so received and secure

her for the amount so advanced by executing a note to her for the amount so advanced, with six per cent interest thereon per annum, from the date of receiving same;'' that in compliance with said agreement the husband on August 1, 1925, executed and delivered to the wife his promissory note in payment of said indebtedness and on August 3, 1925, conveyed to her the homestead (the real estate involved in this suit) for a consideration of $4,000, which amount was indorsed as a credit on said note.

The reply was a general denial ''of each and every allegation of new matter'' contained in the answer.

The testimony offered on the part of the plaintiff was that the value of the real estate was from $4,500 to $6,000. The plaintiff, as a witness, expressed an opinion that in August, 1925, the date of the conveyance, the defendant J. W. McDermott was ''financially embarrassed;'' and the cashier of the Clark County Savings Bank stated that in August, 1925, J. W. McDermott ''had debts that were not being paid'' but that he had never made any ''particular investigation'' of McDermott's financial condition and could not say what his ''ability was'' to meet his obligations.

Robert Wells, one of the heirs of W. H. Wells, and interested in the estate, testified that McDermott told him he was not able to meet his obligations and pay his indebtedness to the ''Wells estate at that time'' and though the time referred to is not fixed, yet we think the inference may be allowed that it was sometime during the year 1925.

The sheriff of Clark County testified that he was sheriff of that county in 1925; that an execution in ''the case of T. J. Daggs, administrator of the estate of W. H. Wells against J. W. McDermott,'' dated in December, 1925, was delivered to him; that at the direction of plaintiff's attorney, he levied upon some corn and hay, which he understood was the property of J. W. McDermott, as rent from a farm; that the corn and hay was claimed by a third party, to whom he released it upon the request and at the direction of both the plaintiff and plaintiff's attorney; that he was unable to find the execution and that he had made a return thereon ''in regard to the amount of corn and hay levied on'' and ''no property found,'' but stated upon cross-examination that the return showed merely the release of the property. There is no testimony that any effort was made to locate any other property owned or claimed by the defendant.

The foregoing is a brief but most favorable summary of the testimony for plaintiff. *The plaintiff did not introduce the judgment set out in his petition or any judgment into evidence.*

On behalf of defendants several witnesses testified as to the reasonable market value of the real estate in controversy as ranging

from $3,500 to $6,000. The award of Government insurance to Mrs. McDermott, dated May 10, 1919, in the amount of $10,000, payable at the rate of $57.50 per month from December 9, 1918, to December 9, 1938, was introduced into evidence. Defendant J. W. McDermott testified that from the time his wife first began to receive payments on the insurance award he had been "using her money." The sole explanation of that was: "We used it for the living—for paying expenses" and for "ice and grocery bills;" that "all along" he had an agreement with her to reimburse her for sums so expended "when demanded;" that at the time of the conveyance of the home property to his wife "my financial condition was worse than it had been;" that "they were demanding" that he reimburse the wife, and on August 1, 1925, he executed a note for the full amount of insurance money received up to that time in the sum of $5,690.50 payable to the wife and due one day after date, which represented the amount he claimed to then owe her and thereupon conveyed her the real estate in controversy and took credit on the note therefor in the amount of $4,500. His testimony as to his assets and liabilities, both on direct and cross-examination, is vague, confusing and unsatisfactory and covers a wide range of time, both prior to and after the date of the alleged fraudulent transfer. Reference is made to selling a farm of 720 acres at some time and of holding notes aggregating $55,000, secured by a deed of trust thereon and the placing of these notes, or some of them, as collateral security for his indebtedness to certain banks. He refers to other tracts of land he at some time owned, which apparently were heavily encumbered, one tract being sold under deed of trust; a tract of forty acres of land is casually mentioned and never thereafter accounted for. He admits, on cross-examination, that he was indebted on August 1, 1925, in the approximate amount of $30,000, but we are unable to arrive at any conclusion from his testimony as to whether or not he claims to have been solvent at the time of the conveyance in question, or what property he then owned, if any, or in what form other than the home place conveyed to the wife.

The wife, defendant Emma S. McDermott, testified she "never turned any of the insurance money over" to her husband; that she deposited same in a bank to her personal account and never wrote any checks thereon payable to her husband; that she spent the "money that I had gotten from the insurance principally in schooling for my oldest son;" that she was "very anxious" that the "son should have a college education" and that the husband opposed, but "finally said for me to go ahead and use the money" for that purpose "and he would later reimburse me;" that she maintained the son in college during a period from 1919 to 1923; that she also expended some of this money for "various things—household ex-

penses'' and that the husband would tell her ''it would all be refunded in due time;'' that she first learned that her husband's financial condition was critical about 1924, and knew at the time of the conveyance that ''his finances were in bad condition.''

The court entered a decree for plaintiff with a finding of facts following closely the language of the petition. The substance of the court's finding is that plaintiff is a judgment creditor upon the judgment alleged in the petition; that the conveyance was fraudulent and made with intent to hinder and defraud creditors ''including this plaintiff'' and that the defendant Emma S. McDermott is a voluntary grantee and a party ''to the fraud intended;'' and the judgment and decree of the court then is:

''That subject to the homestead right of the defendants of $1,500 the surplus or excess in said property above the said $1,500 in said property (real estate described) is subject to the lien of the judgment rendered against J. W. McDermott on the 7th day of September, 1925, for the sum of $7,590.90 in the case of T. J. Daggs, administrator of the estate of W. H. Wells, deceased, rendered in the Circuit Court of Clark County, Missouri.''

The defendants appeal. Plaintiff sues as a judgment creditor and sets out the judgment relied upon in his petition; alleges the conveyance, admittedly made, was fraudulent and was made with intent to ''hinder, delay and defraud'' creditors, including plaintiff, and prays that same be set aside and that the residue of said real estate, after homestead therein is set off, be subjected to the lien of said judgment.

Apparently plaintiff tried and submitted the case on the theory that the judgment set out in his petition, and made the basis of his suit, was admitted by the answer. But, such is not the case. The answer carefully avoids such admission and we are unable to find either an express or implied admission of the judgment therein. The petition alleges *that on October* 20, 1922, *the defendant J. W. McDermott* ''*was and still is indebted to W. H. Wells and his estate*'' on three promissory notes in the principal sum of $6,566.90 and that on September 7, 1925, the plaintiff, the administrator of the estate of W. H. Wells deceased, obtained a judgment for $7,740.90 against McDermott thereon in the Circuit Court of Clark County, Missouri. By their answer defendants admitted: ''That defendants are husband and wife;'' ''that the property described in the petition is the homestead of the defendants'' and ''*admit the indebtedness of defendant J. W. McDermott to the plaintiffs intestate.*''

The answer denies that the property is of the value alleged in the petition and that the conveyance to the wife was voluntary and without consideration and continues: ''for further answer defend-

ants deny each and every allegation in the petition contained." The answer then alleges a bona-fide indebtedness from the husband to the wife and the conveyance to her in good faith of the real estate in payment on said indebtedness. We cannot construe the language of the answer, "defendants admit the indebtedness of defendant J. W. McDermott to plaintiffs intestate," as an implied admission of the judgment alleged in the petition to have been obtained on September 7, 1925, by the administrator of the estate in the Circuit Court of Clark County. No proof was made of the judgment set out in the petition, and the sole and only reference whatsoever in the testimony to any judgment against J. W. McDermott was a statement by the sheriff of Clark County that "I had an execution in my hands in the case of T. J. Daggs, administrator of the estate of W. H. Wells, deceased, against J. W. McDermott," followed by his testimony which we have above set out relating to a levy and return. Proof of the judgment in the action at law upon the promissory notes as alleged in the petition is necessary to establish the status of plaintiff as a judgment creditor, his right to maintain this suit as such and to sustain the decree rendered herein, and that such judgment is alleged in the petition to have been obtained in the same court in which this suit is brought, is not sufficient. The judgment could be brought to the notice of the court in this suit, absent an admission thereof, only by being introduced into evidence. [Fitzmaurice v. Turney, 214 Mo. 1. c. 629, 114 S. W. 504; Smith v. Berryman, 272 Mo. 365, 199 S. W. 165; Adler v. Lang, 26 Mo. App. 226; Hume v. Wright, 274 S. W. 741.] There is no admission nor proof of the judgment upon which plaintiff relies to maintain this suit, and therefore the decree and judgment herein cannot be allowed to stand, nor can a decree here be directed for plaintiff upon the theory that the admission the answer does contain and the proof at least show him to be a general creditor. The general rule of law is that a mere general or simple creditor cannot maintain a suit in equity to set aside a fraudulent conveyance and that "only judgment creditors and those who have a legal or equitable lien on the property" or who have commenced attachment suits against the property can maintain such suit. [Davidson v. Dockery, 179 Mo. 687, 78 S. W. 624; Crim v. Walker, 79 Mo. 335; Hume v. Wright, supra; Ready v. Smith, 170 Mo. 163, 70 S. W. 484; Bank v. Ankrum, 191 Mo. App. 251, 177 S. W. 778; Coleman v. Hagey, 252 Mo. 102, 158 S. W. 829; 27 C. J. 726, 727.] It is unnecessary to discuss the exceptional circumstances under which a general creditor may, in equity, attack as fraudulent a conveyance made by his debtor, since, under the pleadings and the proof, we do not have such a case here. The proof fails to sustain the allegations of the petition and is wholly insufficient to support a decree for the plaintiff. Since,

in an equity case the appellate courts exercise the right to try the case *de novo* (Miller v. Miller, 311 Mo. 110, 277 S. W. 922; McLure v. National Bank of Commerce, 263 Mo. 128, 172 S. W. 336; Henderson v. Henderson, 265 Mo. 718, 178 S. W. 175), the appellants contend that under the pleadings and evidence this cause must be reversed and that all the facts being before the court there is no necessity for a new trial and this court should reverse the case upon the record. In law cases the appellate court will not reverse without remanding, unless convinced the cause has been fully presented, and that the facts are such that recovery cannot be had. [Finnegan v. Railroad, 244 Mo. 608, 149 S. W. 612; Haseltine v. Smith, 154 Mo. 404, 55 S. W. 633; O'Donnell v. Wells, 21 S. W. (2d) 764; Kurtz v. Field (Mo. App.), 14 S. W. (2d) 9.]

We think it is obvious that all the facts necessary to a proper determination and disposition of this cause are not in the record before us. There is a hiatus in essential proof which we are justified in assuming can likely be supplied upon a retrial of the case, and we think a wise exercise of our discretion as a court of equity requires that the case be reversed and remanded for a new trial. But, appellants, in effect, assert that upon the testimony offered by them and the law applicable thereto, the finding herein must necessarily be for the defendants, appellants here, and that no finding for plaintiff, though he makes proof establishing his status as a judgment creditor, could be allowed to stand. We cannot so hold. The transactions between the husband and wife, relative to the expenditure and use of the insurance money, offered here in explanation and support of the conveyance in question, must be very closely scrutinized by a court of equity. The marriage relation affords convenient opportunity for the practice of fraud upon creditors and fraud can be so easily consummated and concealed under cover of marriage that equity requires the court to examine with the utmost care the facts and circumstances surrounding conveyances and business transactions between husband and wife, which prejudice or injuriously affect the rights of creditors. [Zehnder v. Stark, 248 Mo. 39, 154 S. W. 92; Cole v. Cole, 231 Mo. 236, 132 S. W. 734; East St. Louis Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. 685, 142 S. W. 253.]

It is evident that the testimony of the defendants as to the alleged indebtedness of the husband to the wife and the alleged promise or agreement to repay same was not, in the judgment of the chancellor, as the trier of the facts, sufficiently clear, consistent and convincing to establish a bona-fide and preexisting indebtedness and agreement to repay same, as the chancellor resolved the issues of fact raised by defendants' answer and testimony relating to such indebtedness against the defendants. All the testimony upon these

issues was oral, and in such case much deference should be given to the judgment of the chancellor on the facts and the credibility of the witnesses. He "has exceptional advantages in observing the witnesses on the stand and their manner of testifying and is in a better position to weigh the credibility of witnesses than we can possibly be." [Barnard v. Keathley, 230 Mo. l. c. 236, 130 S. W. 314; Bryant v. Stahl, 217 S. W. 31; Creamer v. Bivert, 214 Mo. 473, l. c. 279, 113 S. W. 1118.] All the facts on these issues so raised by defendants apparently being before the court we can with propriety follow the judgment of the chancellor thereon. Such finding, which we adopt, is to the effect that the alleged indebtedness from the husband to the wife was not a bona-fide preexisting indebtedness and that the conveyance was voluntary and made with the intent to hinder and delay creditors. If the plaintiff was a judgment creditor in the manner alleged in his petition his judgment is a lien upon the property so voluntarily conveyed and he is entitled to have that conveyance set aside and removed as an obstacle to the enforcement of his lien. When such conveyance is found to have been fraudulently made with the intent to hinder or delay creditors the objection does not then lie that there are other lands which might have been levied upon or that the debtor is not insolvent. "When a fraudulent conveyance is an obstruction to the enforcement of a valid lien equity will remove it, and the fraudulent grantor and grantee have no standing to whittle down the lien by interposing the fraudulent conveyance between the lienor and his collection of the judgment out of any property the lien affects." [Dalton v. Barron, 293 Mo. 36, 239 S. W. 97.]

Following Schroeder v. Edwards, 267 Mo. 459, l. c. 486, 184 S. W. 108, l. c. 115, the judgment is reversed and the cause remanded for a new trial upon the single issue as to whether plaintiff is a judgment creditor as alleged in the petition. Upon a determination of that issue the circuit court will enter its judgment and decree in accordance with the facts heretofore found and then found upon that issue. *Seddon* and *Ellison, CC.*, concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All of the judges concur.