WALTER R. BUCHANAN, RESPONDENT, v. K. A. CABINESS, APPELLANT.— 221 S. W. 2d 849.

Kansas City Court of Appeals.   Opinion delivered June 13, 1949

830

*Sherman E. Cabiness* for appellant.

*George L. Walker* and *Dwight M. Smith, Jr.,* for respondent.

DEW, P. J.—This is a suit to foreclose a special tax bill. Judgment was for the plaintiff (respondent) in the sum of $320.63 and for the lien prayed for. Defendant (intervenor and appellant) has appealed.

The petition was filed in Jackson County, June 25, 1935. The plaintiff named therein was Thomas R. Hunt, and the defendants were Roy I. Engle and Magdalen M. Engle. In substance, the plaintiff alleged, among other things, that Kansas City, Missouri was a duly organized and existing municipal corporation; that said city, on May 29, 1931, issued to a certain contractor a certain special tax bill on Lot 550, Marlborough Heights in said city, in part payment for sewer construction; that the bill was timely and duly certified to the city treasurer; that the construction work was duly completed according to ordinance; that the tax bill was sold and assigned to the plaintiff; that Lot 550, Marlborough Heights was duly assessed in the sum of $196.60 as its proportionate part of said costs; that the

attached tax bill, in question, by its terms, was payable in four installments, the last installment being due and payable June 30, 1934; that the bill provides that it constitutes a lien on said lot for a period of one year after the last installment becomes due unless a suit be instituted thereon within such year upon ten days' notice filed in the city treasurer's office; that the three installments were due and unpaid, in the sum of $147.45, with interest. The prayer was for foreclosure of the lien.

Summons was issued to the defendants and on September 9, 1935, the sheriff made a non est return thereon. On January 6, 1937, Walter R. Buchanan, upon his application as assignee and purchaser of the tax bill, was substituted as plaintiff in the cause with the consent of Thomas R. Hunt. On November 26, 1946, K. A. Cabiness moved for leave to intervene as a party defendant, having acquired a quit-claim deed to Lot 550 from the defendants Engle. By the order of the court she was permitted to intervene. She then moved to dismiss the petition because of failure to prosecute the cause with diligence and because the claim was barred by judgment of April 5, 1946, in a Land Trust action brought by the Collector of Revenue for Jackson County. The motion to dismiss was overruled. On December 10, 1946, Walter R. Buchanan again petitioned to be substituted as plaintiff, the explanation being that the record of the court's action upon his former application had not been found. The second application for his substitution as plaintiff was sustained.

At the trial the intervenor again moved to dismiss the petition, for want of jurisdiction over the defendants or of the subject matter, and for the reason that another cause of action was pending between the parties known as a Land Trust Suit No. 9, Serial No. M-620-620. This motion was overruled. The substituted plaintiff then dismissed the action as to defendants Engle. Plaintiff thereupon introduced proof of his possession and ownership of the tax bill in question and that there was due thereon $147.45 principal, and $173.18 interest, a total of $320.63.

The only evidence or reference to a Land Trust suit consists largely of colloquy between the court and counsel and the findings of the court, set forth below. Addressing the court the respondent's counsel said:

"* * * If the Court please, with regard to this new motion filed, there are some points I think we can agree on but I would want a day or two to get some evidence up here. In other words, he talks about the Land Trust Suit. That property was in the Land Trust Suit but the Land Trust Judgment was set aside. I take it under those circumstances the Land Trust action was dismissed as to the property and that is out of the case. * * *

"MR. CABINESS: * * * he has stated a wrong conclusion. This case is in the Land Trust, in Land Trust 9, Serial No. M-620-

620. According to the records this case has never been dismissed. That case is still in good standing.

"THE COURT: It is on that point Mr. Smith suggested that evidence would have to be introduced. The motion doesn't prove itself.

"MR. SMITH: The record shows the judgment was vacated and set aside December 18, 1946.

"THE COURT: What judgment was that?

"MR. SMITH: The judgment in the land tax action; that serial number was vacated and set aside. * * *"

Upon cross-examination of the plaintiff (respondent) he was asked:

"Q (By Mr. Cabiness) Did you know there is a Land Trust Law? A. I have heard of it. * * *

"MR. CABINESS: I don't have the tax statement in regard to this property to show that this property is still in the Land Trust, No. M-620-620. If the Court will permit that statement to be made and counsel will agree—

"MR. SMITH: I understood that the judgment was vacated on December 14, 1946.

"MR. CABINESS: And the case is still at issue in the Land Trust as to serial No. M-620-620.

"THE COURT: It is admitted that there is a suit pending in M-620-620, whatever the number is. Is that correct?

"MR. CABINESS: That's right.

"MR. SMITH: I assume it is pending. Section 23 says that suit shall be dismissed when land is redeemed on any particular tract, whether the Land Trust suit is pending—

"MR. CABINESS (interrupting): The point, your Honor, is that the property has not been redeemed. You are making that statement—As a matter of proof the record will show that this suit M-620-620 is still a pending action.

"MR. SMITH: That judgment was vacated and set aside.

"MR. CABINESS: It is a pending action between the parties.

"Q (By MR. CABINESS to the witness Buchanan) At any time did you file an answer in the Land Trust Suit No. 9, M-620-620? A. I did not. * * *

"Q. You didn't answer or defend in the Land Trust Suit? A. No, I did not.

"Q. M-620-620—do you know whether the general taxes have been paid in this case or not? A. Some of them—I couldn't say".

No further reference to the Land Tax Suit appears in the record herein except in the court's finding of facts as follows:

"In September, 1945, the Collector of Revenue for Jackson County, Missouri, filed a suit under the Land Tax Collection Act

for general state, county and city tax against said Lot 550 in Marlborough Heights, suit number being Land Trust Suit No. 9, Serial No. M-620-620; that judgment foreclosing the tax liens on said lot was had on February 23, 1946. Thereafter the intervening defendant herein filed motion to set said foreclosure judgment aside, which motion was sustained and the judgment set aside. Subsequent to setting the judgment aside, through settlement with the taxing authorities, the general taxes on the aforesaid lot were paid; that the tax bill here sued upon was not included in the list or lists as part of the petition filed by the Collector and the plaintiff herein did not appear or file any pleadings in said tax suit''.

Thus the situation is that respondent's foreclosure suit (the present action) had been brought and was pending at' the time the Land Tax Collection Act became effective (1943), and was pending at the time the collector's suit was brought thereunder to foreclose the general tax liens on Lot 550; that respondent's lien was not included in the collector's suit by the collector nor by any answer by respondent; that the judgment was rendered in the collector's suit as to Lot 550, which was thereafter set aside, and appellant then compromised and settled with the collector for the liens mentioned in the collector's suit.

Appellant's first contention is that plaintiff's present suit was abated and the court was without jurisdiction to proceed herein because plaintiff had failed to have his tax bill included in the collector's suit, or to file answer therein within 60 days after the first date of publication of notice of foreclosure therein. Respondent insists that the redemption by the owner (intervenor) as to Lot 550 in the collector's suit did not abate respondent's present suit, but constituted a dismissal of the Land Trust suit as to such lot, and that the court then had jurisdiction to hear and determine the present cause.

The Land Tax Collection Act applies to Jackson County, Missouri. It is found in the Laws of Missouri for 1943 at pages 1031-1062. It was twice amended in 1945 (Laws of Mo. 1945, pp. 1761 and 1926). Its main objectives are ''summarily to foreclose long standing tax delinquencies on real estate and to convey a marketable title by judicial decree, excluding any right of redemption and collateral attack''. Spitcaufsky v. Hatten, 353 Mo. 94, 108, 182 S. W. 2d 86. Its primary purpose is ''to establish a more convenient and efficient manner of collecting delinquent taxes''. Collector of Revenue v. Parcels of Land, etc., 205 S. W. 2d 568. In construing the provisions of the Act and applying same to the facts, such objectives and primary purpose must constantly be considered and the Act as a whole be kept in mind.

We shall review briefly the provisions of the Act which are pertinent to the instant case. Tax bills, general or special, which are at least

four years delinquent, must be foreclosed according to the terms of the Act. (Sec. 4). It is a proceeding in rem and no personal judgment may be rendered. Liens for general taxes of state, county, city, and school district for the same year are equal and first liens, and as to other years priority is given to the newer bills over the older. (Sec. 6). The liens of special tax bills are junior to the liens of the general tax bills, and among themselves the more recent take precedence over the less recent. Within one year after the Act became effective (Aug. 5, 1943), it became the duty of the county collector in each county to bring suit thereunder to foreclose general tax bills which have been delinquent four years or more, in which suit the lien of all other delinquent tax bills affecting the same parcels of land may also be foreclosed (Sec. 7). Within thirty days after the Act took effect, and thereafter annually before January 5, it became the duty of all taxing authorities in the county to furnish the collector a list of all parcels of real estate on which there are liens delinquent for four years or more. Any other tax bill holder may so furnish the collector this information as to any lien held by him, if he so elects. The lists so furnished are combined by the collector for suit and a serial number is given to each parcel of real estate. If suit has been brought in the circuit court of the county on any delinquent tax bill on the list, the collector identifies the same on his list and in his petition, and such pending suit as to any such parcel is to be consolidated with the collector's suit and is deemed abated. Such lists shall be incorporated in the collector's petition. Section 8, as amended, Laws of Missouri, 1945, p. 1762.

After such lists of parcels have been furnished the collector he shall have the exclusive power to collect the same, but if in any year the collector shall fail to institute suit against any such parcel of real estate, then any tax authority or holder of any tax bill may institute suit under the Act to foreclose any delinquent tax lien upon such parcel, bringing the suit in the name of the collector at the relation of the taxing authority or tax bill owner, and such suit shall thereafter be subject to the same procedure as suits brought by the collector (Sec. 10). Not later then sixty days after the date of the first publication of the notice of foreclosure in any suit under the Act, an answer may be filed therein by any person or taxing authority owning or claiming any right, title or interest in any tax bill constituting a tax lien on the real estate described in the petition. The answer shall set up the nature of the interest or objection to the foreclosure as to any of the real estate listed in the petition. "In the event of failure to answer within the time herein fixed the petition shall be taken as confessed and a default judgment may be taken as to all tax bills affecting parcels of real estate as to which no answer has been filed". (Sec. 14). The petition shall contain a prayer for the foreclosure of *all* tax liens upon the real estate described and

for the determination of amounts due and priorities of all tax bills with penalties and attorneys' fees, etc., and for order of the court for public sale of such real estate by the sheriff as provided by the Act. "The petition when so filed shall have the same force and effect with respect to each parcel of real estate therein described as a separate suit instituted to foreclose the tax lien or liens against any one of said parcels of real estate". (Sec. 15).

Redemption is provided for in Section 16. Any person having any right, title or interest in or lien upon any parcel of real estate named in the petition may redeem any such parcel by paying to the collector all of the sums mentioned therein, with principal, interest, penalties, fees and costs then due, at any time prior to the time of the foreclosure sale of such real estate by the sheriff; and in event of failure to redeem, such person shall be barred and forever foreclosed of all right, title and interest in and to such real estate. "Such payment shall operate as a release of the lien of *the tax bill or bills involved* and *as a dismissal of the suit* so far as *such tax bill or bills* are concerned" (Italics supplied).

Under Section 17 the form of notice of foreclosure is set forth showing the nature and purpose of the proceedings, the list of the properties involved, and requiring those holding any right, title or interest in or to or lien upon such parcel of real estate to file answer on or before the date therein fixed, and setting forth the redemption provisions hereinabove described, stating that failure so to answer or redeem would bar and foreclose any defense or objection to the foreclosure under the petition, and that, upon such failure, judgment *may* be taken by default.

Section 20 requires all suits to collect delinquent tax bills which were pending at the time of the commencement of any suit under the Act, to be consolidated with the suit under the Act, and "the parties to such pending suits shall file answers within the time and as provided within this Act." The section provides, however, that any tax bill sought to be collected in any such pending suit may be included in the list to be furnished the collector for inclusion in his petition, and if so included, the pending suit thereon shall thereby be abated, and all amounts then due on such tax bills with interest, costs and penalties shall continue in full force and effect the liens therefor against the respective parcels described in the collector's petition. And when so listed and included in the collector's petition no answer shall be required to collect such delinquent tax bills. The statute of limitations shall not prevent the parties to such pending suits from asserting their existing rights and defenses. If, thereafter, through error, any petition be dismissed as to the lien of any tax bill affecting any parcel described in the petition, such dismissal shall be without prejudice, and the holder may at his option bring another suit to foreclose such lien, within one year from such dismissal, but not thereafter.

Under Section 23 the proceedings under the Act shall be in equity and conducted by the court without the aid of a jury. Absent any answer the court "shall take the allegations of the petition as confessed". The court shall determine the validity of the tax liens of all tax bills affecting the parcels described and the priorities thereof and fix the time and place of foreclosure sale, and "the petition shall be dismissed as to any parcel of real estate redeemed prior to the time fixed for the sheriff's foreclosure sale as provided in this Act".

Section 24 provides for the trial of the issues by the court and for a judgment and decree determining the amounts due on the various delinquent tax bills with interest, penalties and costs and may decree foreclosure and sale of the real estate by the sheriff.

Under Section 25 a waiting period of six months is required before the sheriff's sale after judgment or after new trial has been overruled or after the judgment has been affirmed on appeal, and during such six months' waiting period "and at any time prior to the foreclosure sale by the sheriff, any interested party may redeem any parcel of real estate as provided by this Act". It is provided by Section 32 that except as provided in the Act, the rules of civil procedure shall apply to suits brought under the Act.

Section 52, as amended (Laws of Mo. 1945, p. 1771), recites that the Act shall not infringe upon the provisions of Article 22, Chapter 74, R. S., Mo., 1939, but shall be supplementary and in addition to the same, nor shall the Act infringe upon the provisions of any special charter or general law relating to taxation and collection of taxes not four years or more delinquent, and that "all suits to collect any delinquent tax bills alleged to be a lien against any parcel of real estate pending at the time this Act takes effect may be prosecuted by the parties thereto to judgment and sale, *but not after a petition is filed* against such parcel of real estate, under and pursuant to the provisions of this Act". (Italics supplied). That section further prohibits any owner of any tax bill from advertising or selling any real estate for delinquent taxes *except* after judgment of court having jurisdiction ordering such advertising or sale, when such parcel *is at such time* included in any petition duly filed under the provisions of the Act. Other sections of the Act authorize and establish a Land Trust and provisions creating and affecting the power, authority, duties and administration of such trust, not herein involved.

Certainly respondent's pending action was not abated merely by the enactment of the Land Tax Collection Act (Sec. 52, amended 1945), but upon the filing of the petition by the collector, listing the delinquent general taxes, respondent's pending action was stayed, inasmuch as, if pursued further, it must be consolidated with the collector's suit. (Sec. 20, and amended Sec. 52). Since the collector did not include respondent's lien, it was the duty of respondent to set up his lien claim by answer to the collector's petition within 60

days after the first publication of foreclosure notice in the collector's proceedings (Sec. 14). Not having so answered, the allegations of the collector's petition became confessed as to respondent's claim, and respondent's claim became *subject* to a default judgment of foreclosure (Sec. 14). But, without awaiting any such judgment in the collector's suit, so barring or foreclosing respondent's lien (the previous judgment therein having been set aside), appellant paid to the collector the general tax items contained in the collector's suit. It is true the appellant had a right to "redeem" at any time "prior to the time of the foreclosure sale", by paying to the collector the sums "mentioned in his petition", with interest and penalties (Sec. 16), but when such payment is made before any judgment eliminating or barring the respondent's claim, appellant "redeemed" subject to any further liabilities against the lot as the judgment might thereafter determine. Thus the respondent's claim was neither paid by the appellant, nor had it yet been *adjudged* barred or foreclosed.

It will be noted that there is no evidence of any dismissal of the collector's suit as to Lot 550. The assertion and denial by respective counsel to the court at trial that the record would or would not so show was no evidence. Counsel could not agree on whether the collector's suit was still pending as to respondent's lien or not. The trial court did not find whether or not the collector's suit had been dismissed. We are relegated to the Act itself to ascertain the effect of the settlement of the tax items sued on by the collector before judgment. Section 16 provides that "such payment shall operate as a release of the lien of the tax bills involved and as a dismissal of the suit so far as such tax bill or bills are concerned". Thus, so far as the record before us stands, there has been only such dismissal as would "operate" under Section 16, as stated. This, then, so far as the evidence here shows, would leave the collector's action pending as to any further proceedings on respondent's lien claim. Whatever further right respecting his lien which respondent may have, if any, he must assert in the pending collector's suit, under the record here presented. What might be disclosed by further evidence of the record in the collector's proceedings, if before us, or what would be the legal effect of same under the Act, cannot be determined because such evidence nowhere appears in the record in the case at bar.

Appellant makes the further point that the court erred in not dismissing this action for lack of diligence in the prosecution of it. There was no evidence in the case on the part of the appellant. Nor did the evidence of the respondent (plaintiff) prove the cause of the delay. The bare allegations of the appellant's motion to dismiss were not proof. We cannot hold the trial court in error for overruling the motion when there was no evidence to sustain it. Julius Seidel Lbr. Co. v. Hydraulic Press Brick Co., 288 S. W. 979.

Finally, appellant contends that the court erred in refusing to hold respondent's cause of action to be barred by limitations. Under neither the pleadings nor the evidence does it appear that the statutes of limitation had barred the respondent's action, nor was that defense pleaded. We cannot, therefore, sustain the contention.

As noted from our discussion hereinbefore of the question of jurisdiction of the trial court over the subject matter of this cause, due to the filing of the collector's suit under the Land Tax Collection Act, it is evident that a part or parts of the record of the collector's suit were not offered in evidence or agreed to, which may disclose the final disposition of the collector's suit; and which would appertain to and might or might not be determinative of the jurisdictional question herein. Such evidence, purportedly consisting of court records, is no doubt readily available. As said in the early case of Mulroy v. Knights of Honor, 28 Mo. App. 463, 475: "The court has a discretion to remand where it seems that the ends of justice would be subserved by so doing". Upon the same principle, the Supreme Court said in Daggs v. McDermott, 327 Mo. 73, 82, 34 S. W. 2d 46, 49:

"We think it obvious that all the facts necessary to a proper determination and disposition of this cause are not in the record before us. There is a hiatus in essential proof which we are justified in assuming can likely be supplied upon a retrial of the case, and we think a wise exercise of our discretion as a court of equity requires that the case be reversed and remanded for a new trial".

The judgment must be reversed and, considering all the circumstances in the case at bar, we deem it within our discretion to remand the cause for a new trial, solely to hear any additional evidence, if any, that may be produced as to the status of the collector's suit against said Lot 550, and to determine the legal effect thereof upon respondent's pending suit. It is so ordered. *Cave, J.* concurs; *Vandeventer, J.* (Sitting by order of Supreme Court) concurs.