**KATZ DRUG COMPANY and Skaggs Drug Centers, Inc., Plaintiffs-Appellants,**

v.

**COMMERCIAL STANDARD INSURANCE COMPANY, Defendant-Respondent.**

**No. WD 32786.**

Missouri Court of Appeals, Western District.

Jan. 11, 1983.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 1, 1983.

Application to Transfer Denied April 26, 1983.

---

4. The statute also provides for recovery of incidental damages, but Central made no such claim.

Danny L. Curtis (argued), June Clark, Niewald, Risjord & Waldeck, Kansas City, for plaintiffs-appellants.

Thos. J. Conway (argued), Stephen J. Moore, Popham, Conway, Sweeny, Fremont & Bundschu, Kansas City, for defendant-respondent.

Before NUGENT, P.J., and TURNAGE and LOWENSTEIN, JJ.

NUGENT, Presiding Judge.

Plaintiffs appeal from the judgment of the trial court that under the insurance policy between plaintiffs and Commercial Standard Insurance Company providing coverage for "errors and omissions" in the operation of an employee benefit program, plaintiffs are not entitled to recover the amount of judgment nor the cost of defense in an earlier suit brought by the widow of a former employee. Plaintiffs challenge the findings that any liability of defendant for "errors and omissions" was negated by certain intentional acts of plaintiffs' president, that coverage was provided only for lawsuits actually filed during the policy period, and that plaintiffs are not entitled to a vexatious penalty award. We reverse on the liability issue and remand for determination of damages. We affirm the refusal to award vexatious penalties.

In 1968, defendant issued an "errors and omissions" insurance policy (No. 446–11–09–51) to Katz Drug Company for "all sums which the insured shall become legally obligated to pay on account of any claim ... caused by any negligent act, error or omission ... in the administration of the In-sured's Employee Benefit Programs." The policy period was November 20, 1968, to December 31, 1971.

Katz Drug employed Delphen K. Cannon from 1925 until his retirement on October 6, 1971. In 1961, Mr. Cannon applied for and received coverage through the company's group life insurance plan, certificate No. 13775.

On January 1, 1971, Katz merged with Skaggs Drug Co., Inc. (the companies are hereafter referred to as Katz-Skaggs) and arranged to terminate certificate No. 13775. Effective July 1, 1971, it was replaced with Skaggs' group life insurance policy which ended an employee's life insurance coverage on retirement. By retiring before July 1, 1971, employees could continue their after-retirement coverage under policy 13775.

In anticipation of Mr. Cannon's retirement, his wife contacted the insurance clerk at Katz-Skaggs in April, 1971 and requested a written memorandum of the insurance benefits to accrue to Mr. Cannon upon retirement. The clerk sent a memorandum in response, showing that his coverage extended beyond retirement.

On July 8, 1971, Vincent Davies of Katz-Skaggs personnel records department assured the Cannons, "You don't have a thing to worry about.... Mr. Cannon's insurance was froze, policy 13775." Not until September 7, 1971, did Mr. Cannon learn that his policy was cancelled as of June 30, 1971. At about that time, Mr. Cannon called Mr. Ariagno, a supervisor of Katz-Skaggs, to ask why he had not been informed of the cancellation and was told, "I knew it, but I didn't have the heart to tell you."

Later that month, the Cannons met with Mr. Katz, former president of the firm, and made claim for the life insurance benefits.

On October 12, 1971, Mrs. Cannon talked with Dr. Gutki, president of Katz-Skaggs, about a letter from Equitable Life Assurance Society, the carrier of policy 13775, which apparently stated that life insurance for Mr. Cannon could be reinstated, but that written authorization from Dr. Gutki

was required. Dr. Gutki refused to authorize the reinstatement. Testimony indicated that his refusal was based on the fact that doing so would require similar action for other employees.

In November, 1971 Mr. Cannon wrote directly to Equitable and made another claim for the policy benefits. Equitable simply confirmed that the policy had been cancelled.

Mr. Cannon died on February 10, 1973. His widow sued Katz-Skaggs to recover damages for breach of contract to provide group life insurance benefits.

Citing policy No. 446–11–09–51, the company tendered the defense of that suit to Commercial Standard, which refused the tender and disclaimed coverage.[1] Katz-Skaggs defended the suit itself. The jury found that the company failed to give proper notice of the policy cancellation to Mr. Cannon in time for him to assure continuance of his coverage, and awarded judgment to Mrs. Cannon. *See Cannon v. Katz Drug Co.,* 577 S.W.2d 82 (Mo.App.1978).

Katz-Skaggs satisfied the judgment of $37,889.79 and initiated this action in two counts. In Count I, plaintiffs asked the court to declare that defendant's policy 446–11–09–51 provided coverage for the *Cannon* lawsuit and to award $69,967.18 in actual damages plus vexatious penalties and attorneys' fees. Count II asked for expenses incurred in the defense of an unrelated suit against Katz-Skaggs by Granville and Fannie Blair concerning an automobile accident. In that suit, Commercial Standard refused the tender of defense, forcing Katz-Skaggs to defend the suit. Plaintiffs sought actual damages of $1,516.93 plus attorneys' fees and vexatious penalties.

As to Count I, the trial court reviewed the *Cannon* transcripts and heard new evidence on the issue of attorneys' fees. Its findings of fact and conclusions of law included the following: (1) the basis of recovery in *Cannon v. Katz Drug, supra,* was breach of contract; (2) after failure to give proper notice of cancellation, Katz-Skaggs could have had Mr. Cannon's policy reinstated, avoiding damages to him; (3) any liability for "errors and omissions" which might have arisen because of the failure to notify "was avoided" by Dr. Gutki's intentional act in refusing to authorize reinstatement; (4) alternatively, Commercial Standard received no notice of the conversations between the Cannons and employees of Katz-Skaggs during the policy period; (5) policy 446–11–09–51 required that a suit or claim must be filed against Katz-Skaggs during the policy period, and none having been filed, Commercial Standard has a complete defense; and (6) Commercial Standard's refusal to defend and indemnify Katz-Skaggs was reasonable and not vexatious.

As to Count II, Commercial Standard filed an offer of judgment under Rule 77.04 specifying that it would allow judgment to be entered for $2,298.45. The trial court entered judgment for plaintiff in that amount plus attorneys' fees of $1,500, but did not award vexatious penalties.

On appeal, Katz-Skaggs argues: (1) the policy provides coverage because it does not require that a suit or claim must be filed within the policy period or that coverage is forfeited for failure to give notice of claims made; (2) the trial court was bound by the finding in *Cannon v. Katz Drug, supra,* that Katz-Skaggs' employees committed an "error or omission" in failing to notify Mr. Cannon of the policy cancellation, and therefore, could not find that an intentional act relieved defendant of liability; and (3)

---

1. In a telegram to plaintiffs' attorney, Commercial Standard offered four reasons for denial of coverage: (1) the suit did not allege negligence, error or omission; (2) the suit was not brought against Katz-Skaggs during the policy period; (3) the policy endorsement did not apply to any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation; and (4) "for other good and sufficient reasons, either known or unknown. If you and your client disagree then in the alternative, Commercial Standard contends that there was a violation of a condition precedent to coverage in failing to turn pleading over to the company timely as required by the policy contract." In addition, the telegram advised that Katz-Skaggs had a duty to mitigate damages.

defendant's refusal to defend the *Cannon* and the *Blair* lawsuits entitles Katz-Skaggs to a vexatious penalty award for each case.

Plaintiffs first challenge the trial court's ruling that plaintiffs were not covered by the policy because "446–11–09–51 requires that a suit or claim must be filed during the policy period and the fact that no suit or claim was filed against [Katz-Skaggs] during the policy period . . . constitutes a complete defense . . ."[2] and because defendant received no notice from plaintiffs of any conversations with the Cannons until after the policy period. We agree with plaintiffs that neither of these points precludes coverage.

Paragraph thirteen of the policy's general conditions provides:

13. Notice of claim or suit. If claim is made or a suit is brought against the Insured, the Insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

In addition, the endorsement provides:

IV. ENDORSEMENT PERIOD, TERRITORY. This endorsement applies only to claims under the local jurisdiction of a court of law within the United States of America, its territories or possessions or Canada, . . . provided such a claim is brought against the Named Insured during the policy period and the Named Insured at the effective date of this endorsement had no knowledge of or could not have reasonably foreseen any circumstances which might result in a claim or suit.

■ Without question, no lawsuit was filed before December 31, 1971, the end of the policy period. The parties disagree only as to whether the policy equates a claim with a suit, requiring that absent a filing of a lawsuit, no claim has been filed. We hold that in this context, a claim and a suit are not equal.

First, both paragraph thirteen and the endorsement distinguish between a claim and a suit by using both terms. If the terms were equivalent, the wording would be redundant.

■ Second, unless the reasonable expectations of the policyholder are to the contrary, unambiguous language in an insurance policy must be afforded its plain meaning. If language is open to different constructions, the interpretation most favorable to the insured must be used. *McNeal v. Manchester Ins. & Indemn. Co.*, 540 S.W.2d 113, 120 (Mo.App.1976). Here the term "claim" can be considered either a demand for some asserted right (as argued by plaintiffs) or an actual lawsuit (as argued by defendant). Assuming arguendo that either of these interpretations is reasonable, we apply the meaning most favorable to Katz-Skaggs as the insured, and determine that "claim" as used in policy 446–11–09–51 must include *any* demand made upon Katz-Skaggs as a result of the company's negligent acts, errors or omissions in the operation of its employee benefit program, and cannot be restricted to lawsuits alone.

Third, we are not convinced by defendant's argument that the language in the endorsement, "claims under the local jurisdiction of a court of law", must refer to a lawsuit because no other claim would be under the jurisdiction of a court. In this context, we find that in keeping with our interpretation of the word "claim", *supra,* the endorsement must be held to mean that the policy applies only to claims which, *if they proceeded to suit,* could be heard within the United States or Canada. With such an interpretation, the insurer is protected

---

2. The court's finding as to the filing of a suit or claim is not altogether clear. The parties seem to interpret it to mean that the court considered the filing of a lawsuit a condition precedent to liability (equating "suit" with "claim"). It could also simply mean that the court found no substantial evidence of *either* a suit or a claim within the policy period. If the latter, the

finding was against the weight of the evidence. The record shows numerous and repeated demands by the Cannons against both Katz-Skaggs and Equitable. Under the dictates of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. 1976) (en banc), we need not affirm such a finding.

from potential suit in remote foreign nations, and the insured is extended the protection of the plain language of the endorsement.

Because the record is replete with demands for insurance coverage made upon Katz-Skaggs by the Cannons well before the policy period ended on December 30, 1971, we hold that the policy requirements were met.[3]

 Similarly, we do not find that coverage is precluded because Commercial Standard was not immediately notified of the demands made by the Cannons in 1971. Generally, failure immediately to notify an insurer of a loss does not bar recovery by the insured unless a forfeiture clause in the policy so provides or the insurer was prejudiced as a result. *Schultz v. Queen Ins. Co.,* 399 S.W.2d 230, 234 (Mo.App.1965). Actual prejudice will not be presumed from mere delay in giving notice. *St. Paul & Kansas City Short Line R.R. Co. v. U.S. Fidelity & Guar. Co.,* 231 Mo.App. 613, 105 S.W.2d 14, 25 (1937).

Paragraph thirteen of the policy conditions does not require forfeiture for delay in giving notice. As to prejudice suffered by defendant, we can imagine very little Commercial Standard could have done to reduce its liability had it been notified im-

mediately of the 1971 demands other than encourage Katz-Skaggs to reinstate or otherwise provide the Cannons their lost coverage. Because we are now so limiting plaintiffs' recovery, as discussed *infra,* defendant was not prejudiced by lack of notice. Further, although the Cannons filed the suit against Katz-Skaggs on October 16, 1973, and Commercial Standard was not notified until January 17, 1975, a letter from plaintiffs' attorney on that date explains that the delay occurred because the possibility that the loss of employee benefits to Mr. Cannon was the result of error or omission had just come to light through discovery. The trial did not begin until March 29, 1976. Had Commercial Standard chosen to defend that suit, it would have had fourteen months to prepare. Defendant does not claim that the shortness of this period of time would have prejudiced it, and we find no indication that it would have.

 In their second point on appeal, plaintiffs argue that the trial court was bound by the finding in *Cannon v. Katz Drug, supra,* that Katz-Skaggs' employees committed an "error or omission" in failing to notify Mr. Cannon of the policy cancellation, and therefore, could not find that an intentional act relieved defendant of liability. While we agree with plaintiffs that the policy did cover the failure to notify Mr.

---

**3.** None of the cases cited by the trial court in support of its apparent (although not altogether clear) finding that coverage existed only if a lawsuit was filed during the policy period, actually deal with the question of whether a suit is equivalent to a claim.

In *J.G. Link & Co. v. Continental Casualty Co.,* 470 F.2d 1133 (9th Cir.1972), *cert. denied,* 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63 (1973), the policy provided protection for an architect's errors and omissions only "if claim is first made against the insured during this policy period." The insurer did not contend that "claim" meant "suit", but suggested only that "the information required to constitute a 'claim' for errors and omissions [must] reach the level of a demand for something on the ground of a right." The insured was held entitled to coverage due to ambiguity in the "if claim" provision.

In *Cornell, Howland, Hayes & Merryfield, Inc. v. Continental Casualty Co.,* 465 F.2d 22 (9th Cir.1972), the insured engineering firm was denied coverage not because a lawsuit was

not filed, but because no demand at all had been made against the firm. The only demand during the policy period had been against the city for whom the firm had designed a sewer project.

In *Ranger Ins. Co. v. U.S. Fire Ins. Co.,* 350 So.2d 570 (Fla.Ct.App.1977), the issue was not whether a claim necessitated a lawsuit, but whether the policy in that case was a "discovery" policy (effective only if the error is discovered and reported during the policy period) or an "occurrence" policy (effective if the error occurred within the policy period).

Finally, in *Livingston Parish School Board v. Fireman's Fund Am. Ins. Co.,* 282 So.2d 478 (La.1973), coverage was denied the insured engineer under a "claims discovered and reported during the policy period" provision where the incident which later resulted in suit occurred three days *before* the engineer applied to have the policy renewed. There, as in the other three cases, the meaning of "claim" and "suit" was not at issue.

Cannon, we must first note that their argument is based on a faulty contention. In *Cannon,* the court did not specifically find that Katz-Skaggs committed a "negligent act, error or omission" in the administration of its employee benefit program. Such a holding would, in fact, have been surprising when the applicability of Katz-Skaggs' insurance policy with Commercial Standard, from which that language is derived, was not at issue. The holding, as evidenced by the jury instructions, was simply that Katz-Skaggs "failed to give D.K. Cannon notice before ... cancellation in time for him to assure continuance of his coverage ...." The jury was not required to determine the reason for the failure to notify, and therefore made no finding as to whether it resulted from an honest mistake, an oversight, negligence, an intentional act, or malicious motivation. Such a finding is crucial to the question of whether the failure to notify was covered by policy 446–11–09–51.[4] Where, in an action between an injured party and the insured, a ruling is not made as to the exact grounds of the insured's liability, collateral estoppel does not arise and the insurer is entitled to trial on the coverage issue. *Butters v. City of Independence,* 513 S.W.2d 418, 425 (Mo.1974). Commercial Standard, then, was entitled to have the trial court determine whether the failure to notify was the result of "negligent acts, error or omissions". It did not do so. It found instead that *whether or not liability arose,* it was avoided by Dr. Gutki's intentional refusal to reinstate Mr. Cannon's coverage. We will return to the propriety of that holding, but we first consider the question left unanswered by the trial court—whether a negligent act, error or omission occurred.[5]

The record of the trial court consists almost entirely of the transcript of the *Cannon* lawsuit. We have examined that transcript for evidence relating to the reason Mr. Cannon did not receive notification of the policy termination. The only testimony relevant to that subject was offered by Latha Tanner, insurance clerk for Katz-Skaggs, who testified that at the time her April 6, 1971, memorandum was sent to Mr. Cannon in response to Mrs. Cannon's inquiry, the information contained in it was accurate. No policy change had occurred as of that date, so the memorandum cannot be considered an error. Ms. Tanner also testified, however, that the new certificates for the new policy were sent out to each store and office, where the packets were distributed to the employees. This occurred in mid-year, 1971. Paycheck inserts were also used to notify employees. Although Ms. Tanner was quite sure of the procedures followed, she could not say that Mr. Cannon was actually sent a certificate or notice because "I had other people helping me send them out ... I had so many of them to get out at one time, and I had my other work to do." Nor could she say that he actually received a packet.

We must accept the finding of the jury in the *Cannon* lawsuit that in spite of Katz-Skaggs' efforts to notify all employees of the change in policies, Mr. Cannon remained uninformed. Given Ms. Tanner's testimony, we cannot escape the further conclusion

---

**4.** Not only does the policy limit coverage to "negligent acts, error or omission", it specifically excludes "any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination, or humiliation."

**5.** This is an unusual circumstance, where a question critical to the resolution of the case remains unresolved because it was not addressed by the trial court. If the trial court had the opportunity to view the witnesses and judge their credibility, it would be the appropriate forum. Here, however, the "evidence" before the trial court consisted primarily of a transcript of the *Cannon* trial. Plaintiff apparently assumed that the transcript spoke for

itself, and no witnesses were called to testify to the events between the Cannons and Katz-Skaggs in 1971. That being so, we are in as good (or as difficult) a position as the trial court would be to determine from the transcript whether a negligent act, error or omission occurred within the meaning of the policy. Where the applicable law and the record permit, we are empowered to make a final disposition. *Monnig v. Lewis,* 617 S.W.2d 492 (Mo. App.1981). We therefore do not remand this case on the issue of coverage. See, however, the issue of the amount of damages, *infra,* on which this case is remanded.

that somewhere between the time the packets and the notices were sent out to the employees, and the time Mr. Cannon should have received notice, an error of some kind occurred. Based on these facts, we find that plaintiffs met their burden of proof to show, as the insured, that the loss occurred from causes within the terms of the policy. *Meyers v. Smith,* 375 S.W.2d 9 (Mo.1964). The possibility remains, of course, that someone deliberately intercepted any notice to Mr. Cannon and intentionally kept him from receiving it. This is simply not as reasonable as the far more likely possibility that somewhere in the workings of this large company, Mr. Cannon's notice went astray. Moreover, if defendant relies on a theory of a malicious intercepter of insurance policy notices, a theory which would come within the policy exceptions for malicious acts, defendant bears the burden of proving that such an act occurred. *Gennari v. Prudential Life Ins. Co. of America,* 335 S.W.2d 55, 60 (Mo.1960). Defendant has presented no evidence of such malice.

We hold, therefore, that although the court was not bound by the jury verdict in the *Cannon* lawsuit, the transcript of that trial, admitted into evidence in the case before us, supports plaintiffs' contention that, because of Katz-Skaggs' "negligent acts, error or omission", Mr. Cannon was not notified.

We now must consider the effect which Dr. Gutki's intentional refusal to reinstate Mr. Cannon's coverage had on Commercial Standard's liability. As we have noted, the trial court found that the refusal avoided all liability, citing *Webb Agency, Inc. v. Commercial Standard Ins. Co.,* 333 F.Supp. 966 (E.D.Mo.1971), a case holding that an "errors and omissions" policy does not cover intentional acts by an insurance agent to secure coverage for a customer known to be unqualified. In that case, those acts were the only ones at issue. Here, however, we not only have the intentional acts of Dr. Gutki, obviously not covered by the errors and omissions policy, but also the errors which prevented Mr. Cannon from receiving notice before the policy ter-

minated on June 30, 1971. The fact that Dr. Gutki's behavior is not covered does not erase the liability for the pre-June 30th error.

Commercial Standard must remain liable, therefore, for all damages resulting directly from the pre-June 30th error. At that time, the only apparent loss consisted of the premium which Katz-Skaggs would have been charged to provide the Cannons with their lost coverage.

Commercial Standard is *not* liable, however, for damages resulting from the intentional decision of Dr. Gutki not to reinstate coverage, namely the $37,889.79 paid to Mrs. Cannon as a result of her successful lawsuit, and the costs of defending that suit. Losses resulting from intentional acts are not covered by the policy.

We hold, therefore, that although the policy did not provide coverage for damages resulting from the intentional acts of Dr. Gutki, coverage was provided for damages resulting from the error or omission which resulted in the failure to notify Mr. Cannon, namely the cost of providing the Cannons with coverage.

Unfortunately, the record does not show what the cost of a new life insurance policy affording the Cannons substantially the same coverage or the premium which Equitable would have charged Katz-Skaggs to reinstate coverage would have been. In light of the absence of such evidence, we might simply affirm the trial court's judgment for the reason that plaintiffs failed to offer proof on the issue of damages. But as the court said in the early case of *Mulroy v. Knights of Honor,* 28 Mo.App. 463, 475 (1888), "The court has a discretion to remand where it seems that the ends of justice would be subserved by so doing." Here, where the result of such an affirmance would be to deprive plaintiffs of coverage to which they are entitled, and where the missing evidence of the cost of providing the Cannons their lost coverage is likely to be easily obtainable upon retrial, we are mindful of the wisdom of the Missouri Supreme Court when confronted with a similar shortcoming of the record in *Daggs v.*

*McDermott,* 327 Mo. 73, 34 S.W.2d 46 (Mo. 1931). The court said 34 S.W.2d at 49,

We think it is obvious that all the facts necessary to a proper determination and disposition of this cause are not in the record before us. There is a hiatus in essential proof which we are justified in assuming can likely be supplied upon a retrial of the case, and we think a wise exercise of our discretion as a court of equity requires that the case be reversed and remanded for a new trial.

*See also Bauman v. Conrad,* 342 S.W.2d 284, 289 (Mo.App.1961); *Antoine v. McCaffery,* 335 S.W.2d 474, 491 (Mo.App.1960); *Buchanan v. Cabiness,* 240 Mo.App. 829, 221 S.W.2d 849, 856 (Mo.App.1949).

Accordingly, we choose to exercise our discretion to remand for further evidence on the issue of damages.

In their third point on appeal, plaintiffs contend that the trial court erred in not awarding a vexatious penalty under §§ 375.296 and 375.420[6] for defendant's failure to pay for their losses in both the *Cannon* and *Blair* lawsuits.[7]

 The question is a close one. The fact that, as to the *Cannon* case, we have limited plaintiffs' recovery to those damages resulting from their errors or omissions and precluded recovery for damages resulting from Dr. Gutki's intentional acts does not necessitate a ruling that vexatious penalties are not appropriate. The test is

not the final determination of the issues, but rather, how the facts appeared at the time of the refusal to pay. *McNabb v. Niagara Fire Ins. Co.,* 224 Mo.App. 396, 22 S.W.2d 364, 367 (1929). To support the imposition of the penalty, plaintiff must show that the insurer's refusal to pay the loss was willful and without reasonable cause, as the facts would appear to a reasonable and prudent person prior to trial. *Groves v. State Farm Mut. Auto. Ins. Co.,* 540 S.W.2d 39, 42 (Mo.1976) (en banc). However, § 375.296 specifically provides that plaintiff has made his prima facie case when he shows that the insurer failed to defend. (See footnote 7.) The question for our determination, then, is whether the evidence before the trial court was sufficient to rebut that prima facie case.

 Ordinarily, the reasonableness of a refusal to defend is determined by comparing the policy provisions with the allegations contained in the petition in the action brought against the insured. *Zipkin v. Freeman,* 436 S.W.2d 753, 754 (Mo.1968) (en banc).

In the *Cannon* case, Count I of Mrs. Cannon's petition alleged that "Delphen K. Cannon never received a notice of cancellation ... contrary to the promises made and contained in the assurances of Katz and the certificate prepared, issued and delivered to him by defendant Katz, and contrary to the promises made him by defendant Katz." That count, in contrast to other counts

---

**6.** All sectional references are to Revised Statutes of Missouri, 1978.

**7.** Section 375.296 provides:

In any action, suit or other proceeding instituted against any insurance company ... upon any contract of insurance ... if the insurer has failed or refused for a period of thirty days after due demand therefor prior to the institution of the action, suit or proceeding, to make payment under and in accordance with the terms and provisions of the contract of insurance, and it shall appear from the evidence that the refusal was vexatious and without reasonable cause, the court or jury may, in addition to the amount due under the provisions of the contract of insurance and interest thereon, allow the plaintiff damages for vexatious refusal to pay and attorney's fees as provided in section 375.-

420. *Failure of an insurer to appear and defend any action, suit or other proceeding shall be deemed prima facie evidence that its failure to make payment was vexatious without reasonable cause* (emphasis added).
Section 375.420 provides:

In any action against any insurance company to recover the amount of any loss ... if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

within the petition, did not allege malice on the part of Katz-Skaggs, and so the policy exception for malicious acts was not applicable. Although a question may be raised as to whether the allegation constitutes a negligent act, error or omission, we note first that plaintiffs' attorney himself, in his January 17, 1975, letter notifying defendant of the suit, fifteen months after the petition was filed, admitted that only then had it become apparent, through discovery, that a "negligent act, error or omission" may have caused the damage to Mr. Cannon. He apparently did not find that possibility obvious from the petition itself. Commercial Standard responded on January 21, denying coverage for the reasons stated in footnote 1.[8]

 In the *Blair* case, Commercial Standard refused the tender of defense on the grounds that another insurer was the primary carrier and that it was not notified until five years after the accident occurred. Later, in response to plaintiffs' request in Count II for expenses and penalties for defendant's refusal to defend, Commercial Standard filed an offer of judgment as authorized under Rule 77.04.[9] The offer specified that Commercial Standard would allow judgment to be entered in the amount of $2,298.45. Both plaintiffs and the trial court incorrectly conclude that the offer of judgment was an acknowledgement of defendant's indebtedness. Such an offer is not an admission of liability, but is intended to be an agreement between the parties as to the terms, amount or conditions of the judgment and is distinguishable from a judgment by confession. *Fritzsche v. East Texas Motor Freight Lines*, 405 S.W.2d 541, 544 (Mo.App.1966). It is neither a defense to an action nor a bar to further prosecution of a suit. *Miller v. United Sec. Ins. Co.*, 496 S.W.2d 871, 876 (Mo.App.1973). Rule 77.04 was designed simply to permit a defendant to avoid court costs by making an offer of judgment which, if accepted, would result in a consent judgment. *Miller v. United Sec. Ins. Co., supra*, at 876; *Fritzsche v. East Texas Motor Freight Lines, supra*, at 544. The offer does not automatically trigger imposition of an award for vexatious penalties as suggested in plaintiffs' brief.

Finally, on the vexatious penalties issue as to both the *Cannon* and the *Blair* lawsuits, the penal nature of § 375.420 and the requirement that it be strictly construed are most important. *Frisella v. Reserve Life Ins. Co.*, 583 S.W.2d 728, 735 (Mo.App.1979). This strict construction requires that the award be considered discretionary with the trial court. In *Noble v. Missouri Ins. Co.*, 204 S.W.2d 446, 450 (Mo.App.1947), the court observed that

[t]he statute provides that if it appears from the evidence that the company has vexatiously refused to pay the loss, the court or jury "may" allow damages in addition to the amount of the loss with interest. . . . In other words, the statutory penalty does not go as a matter of

---

**8.** Plaintiffs point to the immediate response to that letter as evidence of a failure to investigate and cite *Berry v. Fed. Kemper Ins. Co.*, 621 S.W.2d 948, 953–54 (Mo.App.1981), as standing for the proposition that such a failure necessarily constitutes bad faith. We cannot agree that *Berry* has such an expansive meaning. In *Berry*, the facts showed that "with slight investigation or inquiry, the defendant could have determined that it was liable" but we did not state that because of that fact, bad faith must be found. Failure to investigate was but one of the several factors justifying the affirmance of the jury's award. Also relevant were denial of liability without stating the grounds of denial, failure to pay the amount of damages admitted by defendant, and failure to promptly return premiums where the defense was lack of an insurable interest. None of these additional factors is present here.

**9.** Rule 77.04 provides:

At any time more than ten days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued. If within five days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon judgment shall be entered. If the offer is not accepted within five days it shall be deemed withdrawn and evidence thereof is not admissible. If the adverse party fails to obtain a judgment more favorable than that offered, he shall not recover costs in the circuit court from the time of the offer but shall pay costs from that time.

course or of law, but instead its allowance rests in the discretion of the trier of the facts. The law may support the allowance of the penalty, but it will not compel it (citations omitted).

In light of the trial court's finding that Commercial Standard's refusals to defend were reasonable, and in light of the broad discretion given the court to award or deny additional damages even if the refusal is found to be vexatious, we cannot say that the trial court abused its discretion in refusing to award vexatious penalties in either case.

For the foregoing reasons, we hold that Commercial Standard is liable under policy 446–11–09–51 only for those damages which directly resulted from Katz-Skaggs' failure to notify Mr. Cannon of the termination of his policy, namely the cost of providing the Cannons their lost coverage, and not for damages which resulted from Dr. Gutki's refusal to reinstate coverage, namely, the award to Mrs. Cannon and the cost of defending that suit. We reverse and remand this case to the trial court for determination of those damages. We affirm the trial court's refusal to award vexatious penalties.

All concur.